UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRESÓNA MULTIMEDIA, LLC,

Plaintiff,

v.

PRE-CLEARED LIMITED D/B/A CLICKNCLEAR, CHANTAL EPP, and DAVID WALSH,

Defendants.

CASE NO. 1:25-cv-6202-GBD

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF TRESÓNA MULTIMEDIA, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 5

I. Defendants' Rule 12(b)(2) Motion Should Be Denied .......... 5

II. Defendants' Rule 12(b)(6) Motion Should Be Denied As Tresóna Has More Than Sufficiently Pled its False Advertising Claims Under the Lanham Act .......... 8

A. Applicable Standards .......... 8

B. Tresóna Adequately Alleges the Falsity of Each Challenged Statement and How It Misrepresents the License Product .......... 10

1. Defendants' Statements are Plainly Actionable and Not Mere "Opinion" .......... 11

2. Defendants Concede the Literal Falsity of the "Practise Alone" Ad Statements and Establish They are Actionable .......... 13

3. Defendants Falsely Advertise To All of Their Target Consumers That a License to "Set Choreography" to Music is "Needed" .......... 14

4. Defendants Falsely Advertise All of Their Target Consumers "Need" to License a Public Performance Right Separate from PRO Licenses .......... 17

5. The LVS Capitalizes on the Above False Advertising .......... 20

6. Defendants Make False Statements About Tresóna's Products .......... 21

7. False Advertising on Lawsuits is False And Inextricably Tied to the Above .......... 23

C. Tresóna Adequately Alleges Dissemination of Defendants' False Advertising .......... 24

D. Tresóna Adequately Pleads Its Damages and Injuries .......... 26

III. Tresóna Sufficiently Plead Causes of Action Under New York State Law .......... 26

A. Tresóna Sufficiently Alleges Defendants' Conduct is "Consumer Oriented" .......... 27

B. Tresóna Sufficiently Alleges Deception in New York .......... 28

C. Defendants' Deceptive Practices Through the LVS Violate The GBL .......... 29

D. Tresóna's GBL Claims are Not Time-Barred .......... 31

**TABLE OF CONTENTS**
(continued)

**Page**

IV. Tresóna More Than Adequately Pleads Its Claims Against Epp and Walsh.................... 32

V. In the Alternative, Tresóna Should Be Granted Leave to Amend .................................... 33

CONCLUSION........................................................................................................................ 33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....................................................33

*Actava TV, Inc. v. Joint Stock Co.*,
412 F. Supp. 3d 338 (S.D.N.Y 2019)....................................................26

*Acticon AG v. China N.E. Petrol. Holdings Ltd.*,
692 F.3d 34 (2d Cir. 2012)....................................................9

*Affiliated FM Insurance Co. v. Liberty Mechanical Contractors, Inc.*,
2013 WL 4526246 (S.D.N.Y. Aug. 27, 2013)....................................................33

*Agerbrink v. Model Serv. LLC*,
155 F. Supp. 3d 448 (S.D.N.Y. 2016)....................................................33

*American Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*,
820 F. Supp. 1072 (N.D. Ill. 1993)....................................................25

*Apotex, Inc. v. Accorda Therapeutics, Inc.*,
2014 WL 5462547 (S.D.N.Y. Oct. 23, 2014)....................................................25

*Apr. Prods., Inc. v. Strand Enters.*,
221 F.2d 292 (2d Cir. 1955)....................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................8

*Asset Co IM Rest, LLC v. Katzoff*,
2025 WL 919489 (S.D.N.Y. Mar. 26, 2025)....................................................9, 22

*Bd. of Trs. of State Univ. of New York v. Fox*,
492 U.S. 469 (1989)....................................................30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................8

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*,
2024 WL 1346562 (S.D.N.Y. Mar. 29, 2024)....................................................15

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,
931 F.2d 1472 (11th Cir. 1991)....................................................32

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
173 F.3d 725 (9th Cir. 1999) ....................1, 21

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ....................31

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013)....................28

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)....................9

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
2023 WL 3570017 (S.D.N.Y. May 18, 2023) ....................1, 27

*Edmondson v. Velvet Lifestyles, LLC*,
F.4th 1153 (11th Cir. 2022) ....................32

*Edward Lewis Tobinick, MD v. Novella*,
848 F.3d 935 (11th Cir. 2017) ....................23

*Elcan Indus., Inc. v. Cuccolini, S.R.L.*,
2014 WL 1173343 (S.D.N.Y. Mar. 21, 2014). ....................8

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016)....................24

*Enzinna v. D'Youville Coll.*,
84 A.D.3d 1744 (N.Y. App. Div. 2011) ....................31

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002)....................25

*Finan v. Lafarge S.A.*,
2025 WL 2504317 (E.D.N.Y. Aug. 29, 2025)....................6

*Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*,
2018 WL 3639929, at *12 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (S.D.N.Y. July 31, 2018) ....................6

*Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*,
2018 WL 3639929 (S.D.N.Y. July 10, 2018) ....................7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Gen. Sec., Inc. v. Com. Fire & Sec., Inc.*,
2018 WL 3118274 (E.D.N.Y. June 25, 2018) ....24, 25

*Goodman v. Does*,
2014 WL 1310310, at *2 (E.D.N.C. Mar. 28, 2014) ....22, 23, 24

*Gristede's Foods, Inc. v. Unkechauge Nation*,
2008 WL 3334032 (E.D.N.Y. Aug. 8, 2008)....11, 24

*Gristede's Foods, Inc. v. Unkechauge Nation*,
532 F. Supp. 2d 439 (E.D.N.Y. 2007) ....31

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
37 N.Y.3d 169, 171 N.E.3d 1192 (2021)....1, 27

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
2007 WL 1601491 (S.D.N.Y. June 4, 2007) ....31

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013)....8

*Incarcerated Ent., LLC v. Warner Bros. Pictures*,
261 F. Supp. 3d 1220 (M.D. Fla. 2017)....10

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
596 F. Supp. 2d 497, 502 (D. Conn. 2009)....9

*Int'l Code Council, Inc. v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) ....19, 23, 30

*Joint Stock Co. v. Infomir LLC*,
2017 WL 1321007 (S.D.N.Y. Mar. 30, 2017) (Daniels, J.)....7

*Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*,
575 F. Supp. 3d 445 (S.D.N.Y. 2021)....5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....26

*Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*,
731 F. Supp. 587 (S.D.N.Y. 1990) ....8

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
295 F. Supp. 3d 404 (S.D.N.Y. 2017)........................................5

*Meachum v. Outdoor World Corp.*,
235 A.D.2d 462 (N.Y. App. Div. 1997) ........................................28

*Merck Eprova AG v. Brookstone Pharms., LLC*,
920 F. Supp. 2d 404 (S.D.N.Y. 2013)........................................32

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
948 F. Supp. 2d 538, 554 (D. Md. 2013) ........................................16

*Minnie Rose LLC v. Yu*,
169 F. Supp. 3d 504 (S.D.N.Y. 2016)........................................10

*Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.*,
880 F.Supp. 1005 (S.D.N.Y. 1994) ........................................25

*Monsanto Co. v. Haskel Trading, Inc.*,
13 F. Supp. 2d 349 (E.D.N.Y. 1998) ........................................32

*Mountz v. Global Vision Prods., Inc.*,
3 Misc.3d 171 (Sup. Ct., N.Y. Cty. 2003) ........................................28

*NewMarkets Partners LLC v. Oppenheim*,
638 F. Supp. 2d 394 (S.D.N.Y. 2009)........................................10

*November v. Time Inc.*,
13 N.Y.2d 175 (1963) ........................................10

*Oec Freight (NY), Inc. v. Storlie Funiture Distributors, LLC*,
2025 WL 1617456 (S.D.N.Y. June 6, 2025) ........................................22

*Oracle USA, Inc. v. Rimini St., Inc.*,
2021 WL 1224904, at *14 (D. Nev. Mar. 31, 2021), *on reconsideration*, 2021
WL 9333202 (D. Nev. June 9, 2021)........................................15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995) ........................................27

*Penguin Random House LLC v. Colting*,
270 F. Supp. 3d 736 (S.D.N.Y. 2017)........................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*People ex rel. Spitzer v. Telehublink Corp.*,
301 A.D.2d 1006 (N.Y. App. Div. 2003) ....................28

*PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*,
530 F. Supp. 3d 301, 350-51 (S.D.N.Y. 2021) ....................10, 12, 14

*Plastic Molded Techs., Inc. v. Cinpres Gas Injection Ltd.*,
290 F. Supp. 2d 793 (E.D. Mich. 2003)....................13

*Prep Sols. Ltd. v. Techono Ltd.*,
731 F. Supp. 3d 752 (E.D. Tex. 2024)....................7

*Ramada Franchise Sys., Inc. v. Boychuk*,
283 F.Supp.2d 777 (N.D.N.Y.2003)....................32

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
241 F.3d 232 (2d Cir. 2001)....................11

*Salon FAD v. L'Oreal USA, Inc.*,
2011 WL 70591 (S.D.N.Y. Jan. 10, 2011) ....................11, 21

*Sec. & Exch. Comm'n v. Fiore*,
416 F. Supp. 3d 306 (S.D.N.Y. 2019)....................9

*Securitron Magnalock Corp. v. Schnabolk*,
65 F.3d 256 (2d Cir. 1995)....................26, 29

*Seven-Up Co. v. Coca-Cola Co.*,
86 F.3d 1379 (5th Cir. 1996) ....................25

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999) ....................27

*Statler v. Dell, Inc.*,
775 F. Supp. 2d 474 (E.D.N.Y. 2011) ....................31

*Sussman v. Grado*,
192 Misc. 2d 628 (Dist. Ct., Nassau Cty. 2002) ....................29, 30

*Trackman, Inc. v. GSP Golf AB*,
2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024)....................12, 13

*Unlimited Cellular, Inc. v. Red Points Sols*.
SL, 677 F. Supp. 3d 186 (S.D.N.Y. 2023)....................26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Volunteer Firemen's Ins. Servs. v. McNeil & Co.*,
221 F.R.D. 388 (W.D.N.Y.2004)....................9

*Ward v. TheLadders.com, Inc.*,
3 F. Supp. 3d 151 (S.D.N.Y. 2014) ....................28

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283 (S.D.N.Y. 2015....................26

*Wellnx Life Scis. Inc. v. Iovate Health Scis. Rsch. Inc.*,
516 F. Supp. 2d 270 (S.D.N.Y. 2007)....................9

*Willis v. Scorpio Music (Black Scorpio) S.A.*,
2016 WL 3460282 (S.D. Cal. June 24, 2016)....................19

*Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*,
2019 WL 7837361 (S.D. Fla. May 22, 2019) ....................13

### OTHER AUTHORITIES

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2025)
§ 27:64 ....................11

4 William F. Patry, Patry on Copyright (2025)
§ 12:20.10 ....................15

Fed. R. Civ. P.
4(k)(2) ....................6, 7

N.Y. C.P.L.R.
§ 302(a)(1) ....................6

Nimmer on Copyright (2025)
§ 2.06....................17

Plaintiff Tresóna Multimedia, LLC ("Tresóna") respectfully submits this Memorandum of Law in opposition to the Motion to Dismiss of Defendants Pre-cleared Limited d/b/a ClicknClear ("ClicknClear"), Chantal Epp ("Epp"), and David Walsh ("Walsh") (collectively, "Defendants").

## PRELIMINARY STATEMENT

In their motion to dismiss Tresóna's Complaint (ECF 33; "Motion" or "Mot."), Defendants misstate legal standards and their own deceptive advertisements and License Verification System ("LVS"), ignore governing law, and sidestep the numerous detailed facts set forth in Plaintiff's fulsome pleading that more than plausibly states violations of the Lanham Act and N.Y.'s General Business Law ("GBL").[1] Defendants also in effect improperly seek to obtain summary judgment in their favor on their self-serving and erroneous characterization of legal and factual matters. Despite this effort, as demonstrated below, the Motion actually ***supports*** Tresóna's claims, while none of the arguments therein remotely support dismissal.[2]

***First***, while ignoring the actual deceptive ads at issue pictured in the Complaint, Defendants are compelled to admit the fact that, in seeking to sell its music licenses, ClicknClear markets and offers to a target consuming audience a license: 1) to "practise" alone; 2) to set choreography to songs; and 3) to perform routines in public with songs. Defendants also do not dispute that their advertising is as shown on their website in which ClicknClear asserts that these

[1] As discussed in detail below, Defendants misrepresent the applicable legal standards, including in connection with Plaintiff's GBL claim. Ignoring binding precedent from the Court of Appeals of New York, Defendants cite to abrogated law claiming that only ads targeting a subset of consumers who purchase "good and services for personal, family, or household use" are actionable. Mot. at 10, 30. However, *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 171 N.E.3d 1192 (2021), overruled this outdated proposition, and courts now consider the relevant question to be whether the deceptive practices are directed to the consuming public and the marketplace. *See, e.g., Edmar Fin. Co., LLC v. Currenex, Inc.*, 2023 WL 3570017, at *20 (S.D.N.Y. May 18, 2023) (recognizing abrogation of pre-*Himmelstein* framework).

[2] Defendants' fragmented approach of dissecting cherry-picked (and incomplete) excerpts of their false statements from the Complaint rather than considering them in "context" as is required reveals the lack of viability of their arguments. As consumers receive the statements in "context," they unequivocally constitute false advertising.

three rights (among others) ***in fact*** "are ***needed*** to use a song [for a] performance" and that "***ClicknClear offer all of these rights with our standard license***." (emphases added).[3]

There is often misleading information about what rights are required for ensembles to make an arrangement of music to accompany your routine.
Below is a breakdown of the rights that are needed to use a song in your performance:




In order to use one song for any of the above uses, you need a license from all of the songwriters on the work.

ClicknClear offer all of these rights with our standard license for $100-$250 per song via our pre-cleared licensing platform or at a fee set by the rightsholder(s) if using our approval portal. Our licenses cover you per song, per group, for 1 years' use.

***Second***, as is clear even from Defendants' own Motion, Defendants' advertisement that these rights are "***needed***" and "***offer[ed]***" in ClicknClear's license for all performers in the ***niche*** target group ***in all instances*** is false and misleading as a matter of fact and law.[4] Defendants bend over backwards in the Motion seeking to ignore their actual advertisements, dodging and/or mischaracterizing them. But what Defendants end up doing is making further admissions. With

[3] The graphic here is from ClicknClear's website (*e.g.*, Compl. ¶ 51). The red boxes have been added to highlight Defendants' false statements. Similar ads stating the "set choreography" and "perform the routine in public" rights appear throughout ClicknClear's website targeting the other niche performing groups including, for example, artistic swimming, gymnastics, and indoor skydiving. *See* Declaration of Andrew Nietes ("Decl."), Exs. H-J (collecting webpages for above activities as referenced in Complaint; showing identical advertising across the board).
[4] Since ClicknClear has claimed that its licenses are superior to Tresóna's because it purportedly offers such rights across the board (Tresóna's licenses do not), Tresóna and the relevant market are harmed. Compl. ¶¶ 48, 129-42.

respect to the allegedly "needed" and " offer[ed]" "practise alone" license, Defendants punt, seeking to downplay the ad but nonetheless conceding that is exactly what it says. Now, however, Defendants state that ClicknClear does the exact ***opposite*** of what it advertises: it does ***not*** include the right to "practise alone" in its license. . By that admission, Defendants concede that their advertising statement on that fact issue is ***literally false***.

With respect to the latter two allegedly "needed" rights, choreography and public performance, Defendants also attempt to distance themselves from their ***actual*** ads. They claim that what they ***meant*** in the ads is a performer "needs" a "derivative" use license for setting music to choreography, and a "grand rights license" (which they admit is only for a ***dramatic*** public performance). Defendants twist themselves in knots trying to demonstrate how these are two separate rights. But by these arguments, Defendants only help prove Tresóna's claims. Contrary to Defendants' advertisements, there is ***no*** absolute "need" in all instances for either a derivative use license to set music in practice to choreography, and no absolute "grand rights" licenses "needed," as both inquiries are fact specific. As discussed below, courts, including Defendants' authorities, have held clearly and unambiguously that derivative work and grand rights licenses are ***not*** "needed" ***in all performances*** of music, and that would include performances by fitness instructors, cheerleaders, dressage teams, marching bands, winter guards, and gymnasts. The reason is simple: ***determining whether such licenses are "needed" is fact-specific and an individualized inquiry in all instances.*** Thus, it is false for Defendants to advertise – for the purpose of inducing consumers to purchase licenses from them – that such rights are unequivocally "needed" by all their target consumers for all uses.

***Third***, Defendants also try to distance themselves from their patent advertising effort to become in essence the legal guru of U.S. music licensing in this space. Defendants concede that

ClicknClear's LVS is a product which scans licenses of third parties, including those from Tresóna, ***for evidence of a grant of rights***. Mot. at 5. That is a legal function, without question. Defendants, by purporting to "verify" third party licenses, are holding themselves out as an authority to offer this legal process, and they have no authorization or right to do so. This highly deceptive practice must be stopped. Tellingly, Defendants' do not dispute, and their own marketing materials confirm, that when such third-party licenses do not contain the (superfluous) rights discussed above, the LVS declares them "unverified" or "invalid." Nor do Defendants address or dispute any of the allegations in the Complaint that Epp has acknowledged that the LVS causes consumers to "panic" and seek additional licensing from ClicknClear and is used as a business "conversion tool." Defendants' false advertising campaign is inextricably and intentionally the foundation for their LVS business conversion tool that harms both consumers and competitors like Tresóna.

***Finally***, conceding its weakness, Defendants relegate a cursory personal-jurisdiction argument to the back of their Motion. The argument is wholly conclusory and ignores the pleaded, extensive activities undertaken by the foreign Defendants to create a substantial presence in this U.S. market throughout the U.S., including in the core music city of New York. Similarly, Defendants ignore the allegations demonstrating the individual liability of Epp and Walsh as the "moving forces" behind the false and misleading ad campaign and the LVS who fully control ClicknClear's U.S. business marketing efforts.

Contrary to Defendants' baseless attacks, Plaintiff is not seeking to curtail legitimate competition but rather has brought this case, reluctantly, to rectify Defendants' cavalier refusal to address legitimate issues: Defendants' misrepresentation of U.S. copyright and licensing principles in this niche market *via* a deceptive fact-based advertising campaign, and with the improper use of a purported "license verification" tool for third-party licenses that harms Tresóna and others.

Tresóna has more than adequately satisfied its pleading obligations, as Defendants' false and misleading advertisements and their deceptive LVS tool go far beyond any permissible conduct and constitute blatant violations of the Lanham Act and the GBL.

Defendants' Motion should be denied.

## ARGUMENT[5]

### I. Defendants' Rule 12(b)(2) Motion Should Be Denied

To defeat a 12(b)(2) motion for lack of personal jurisdiction (absent discovery or a hearing) a plaintiff "need only make a *prima facie* showing of personal jurisdiction over the defendant." *Lavazza Premium Coffees Corp. v. Prime Line Distributors Inc.*, 575 F. Supp. 3d 445, 458 (S.D.N.Y. 2021) (citing *Porina* v. *Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). Even at this stage, "the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials." *Lavazza*, 575 F. Supp. 3d at 458 (citation omitted).[6] All allegations in the complaint are presumed to be true and all doubts resolved in favor of the plaintiff. *Id.* Tresóna has made far more than a *prima facie* showing.

Conceding the weakness of their Motion on this issue, Defendants devote only two conclusory sentences ***at the end*** of their 33-page brief to the threshold matter of personal jurisdiction, failing to address any of these standards and – more tellingly – failing to address any of the factual grounds for jurisdiction over all Defendants alleged in the Complaint.[7]

---

[5] The relevant facts in the Complaint that must be accepted as true, including those ignored or mischaracterized by Defendants, are intersperse throughout the Argument section.

[6] Consistent with this rule, Tresóna is submitting additional documents supporting its allegations and showing the nature and extent of Defendants' New York activities including promoting their false advertising. *See* Decl., Exs. A-G (ClicknClear's public use of a New York law firm, Epp's attendance at New York events, Epp seeking licensing from Tresóna on behalf of New York organizations, and Epp and Walsh as presenters for the U.S. Equestrian Foundation with events and operations in New York).

[7] To the extent Defendants attempt to make any new arguments on reply, they should not be permitted as they have been waived. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 414-15 n.5 (S.D.N.Y.

Personal jurisdiction arises here under either N.Y. C.P.L.R. § 302(a) or Fed. R. Civ. P. 4(k)(2) in the absence of New York long-arm jurisdiction. Rule 4(k)(2) "permits a federal district court to exercise personal jurisdiction where three elements are met: (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state, and (3) the exercise of jurisdiction is 'consistent with the United States Constitution and Laws.'" *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*, 2018 WL 3639929, at *12 (S.D.N.Y. July 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (S.D.N.Y. July 31, 2018) (citations omitted). Under Rule 4(k)(2) "a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole[.]" *See Finan v. Lafarge S.A.*, 2025 WL 2504317, at *15 (E.D.N.Y. Aug. 29, 2025) ("because the court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) . . . the court need not and does not decide whether the court also has jurisdiction under N.Y. C.P.L.R. § 302(a)(1)") (citation omitted).

In the event Defendants are not subject to any state jurisdiction, Rule 4(k)(2) provides the jurisdictional predicate over them. Tresóna brings its claims under the Lanham Act, and Defendants (each based outside the U.S.) do not identify any state in the U.S. as to which they admit they are subject to jurisdiction. The Complaint adequately alleges Defendants' substantial contacts with the U.S. – all of which have been conveniently omitted by Defendants – such that the exercise of jurisdiction would be consistent with the Constitution. This includes that: ClicknClear, at the direction of and under the control of Epp and Walsh, obtained a U.S. trademark registration from the United States Patent and Trademark Office ("USPTO") for the mark "CLICKNCLEAR" for use in connection with, *inter alia*, "Legal Services" (the "Registration"); consumers "across the U.S. have viewed ClicknClear's false and deceptive advertising, including

2017) (district court "need not consider arguments made for the first time in a reply brief") (citations omitted).

materials presented either in person or *via* remote teleconference by [] Epp and Walsh at industry conferences and events"; "Epp and Walsh, regularly travel to the U.S. . . . for the purpose of soliciting licensing relationships with U.S. music rights owners and related groups, a substantial number of which are located in this District"; and Defendants (as they admit, *see* Mot. at 3) advertise to many U.S. organizations and their members including the Kentucky-based U.S. Equestrian Federation, Ohio-based Winter Guard International ("WGI"), Drum Corps International, and the U.S. National Federation of High Schools. Compl. ¶¶ 19(a)-(g), 60, 70, 109. These myriad contacts with the U.S. as a whole sufficiently confer jurisdiction under Rule 4(k)(2). *See Freeplay Music*, 2018 WL 3639929, at *15 ("[defendant] has continuously and deliberately exploited the U.S. market, and there is a direct nexus between [defendant's] wrongful conduct and [defendant's] U.S. contacts"); *Prep Sols. Ltd. v. Techono Ltd.*, 731 F. Supp. 3d 752, 760 (E.D. Tex. 2024) (jurisdiction where "Defendant 'knowingly offers its products . . . through its website directly to consumers throughout the United States without restriction.' . . . [and] knows it is accessing 'the United States market[.]'").

Tresóna also submits, and Defendants do not rebut, that jurisdiction is appropriate under any of these three prongs of N.Y. C.P.L.R. § 302(a): Defendants (1) transacted business or contracted to supply goods or services in the state; (2) committed a tortious act within the state; and (3) committed a tortious act outside the state both causing injury within the state by regularly soliciting business in the state or expecting the act to have consequences in the state with substantial revenue from interstate and international commerce. *See Joint Stock Co. v. Infomir LLC*, 2017 WL 1321007, at *1-2 (S.D.N.Y. Mar. 30, 2017) (Daniels, J.) (personal jurisdiction for Lanham Act claim by Defendants' selling subscriptions over the Internet to dealer in New York). Defendants have "targeted consumers in New York"; "[c]onsumers in New York . . . have viewed

ClicknClear's false and deceptive advertising"; Epp and Walsh travel to New York frequently to attend "industry conferences and events" to promote ClicknClear and "for the purpose of soliciting licensing relationships with U.S. music rights owners and related groups, a substantial number of which are located in this District"; "ClicknClear has entered into contracts with third parties in New York in connection with the goods and services that Defendants have falsely advertised and promoted"; Defendants know their "conduct is likely to cause harm to Tresóna and to consumers in New York and in the U.S."; Defendants' false and misleading advertising has targeted organizations which have operations, events, and members in New York including the U.S. Equestrian Federation, WGI, and similarly U.S.-based organizations with members, participants, and events in New York. Compl. ¶¶ 19(a)-(g), 35, 60, 70, 166.[8]

Thus, personal jurisdiction exists over all Defendants under either standard.[9]

## II. Defendants' Rule 12(b)(6) Motion Should Be Denied As Tresóna Has More Than Sufficiently Pled its False Advertising Claims Under the Lanham Act

### A. Applicable Standards

A plaintiff defeats a 12(b)(6) motion where the complaint includes "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept as true all factual allegations in the complaint and draw all

---

[8] This is plainly not analogous to the situation as in *Elcan Indus., Inc. v. Cuccolini, S.R.L.* (cited by Defendants, Mot. at 32) where the plaintiff made ***no*** allegations tying any conduct at issue to New York. *See* 2014 WL 1173343, at *2 (S.D.N.Y. Mar. 21, 2014).

[9] Defendants' Motion should be denied for the reasons stated above. In all instances, Tresóna would at minimum be entitled to jurisdictional discovery before any grant of the Motion as it has "made a sufficient start and shown [its] position to be non-frivolous." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 679 (2d Cir. 2013) (jurisdictional discovery warranted for defendants alleged to engage in conduct directly targeting the U.S.); *see also* Decl., Exs. A-G (collecting supporting documentation and examples for personal jurisdiction).

reasonable inferences in plaintiff's favor. *Acticon AG v. China N.E. Petrol. Holdings Ltd.*, 692 F.3d 34, 37 (2d Cir. 2012). A court may consider documents attached to, incorporated by reference, or otherwise integral to the complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).[10] "[M]ixed question[s] of fact and law that cannot be resolved solely from the facts alleged in the Complaint" warrant denial of a motion to dismiss. *Sec. & Exch. Comm'n v. Fiore*, 416 F. Supp. 3d 306, 330 (S.D.N.Y. 2019) (citations omitted). Facts may be pled "'upon information and belief' where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Asset Co IM Rest, LLC v. Katzoff*, 2025 WL 919489, at *11 (S.D.N.Y. Mar. 26, 2025) (citation omitted).

Defendants' claim (Mot. at 7) that the "particularity" standard of Rule 9(b) for fraud must be met pleading a Lanham Act claim is incorrect, and a misstatement of the law. Not surprisingly, Defendants cite no applicable authority from the Second Circuit or within this District to support their claim because courts in this District and within this Circuit hold the exact opposite: "Contrary to defendants' contention, Rule 8(a), Fed.R.Civ.P., and not Rule 9(b), Fed.R.Civ.P., applies to false advertising claims under the Lanham Act." *Wellnx Life Scis. Inc. v. Iovate Health Scis. Rsch. Inc.*, 516 F. Supp. 2d 270, 283 n.2 (S.D.N.Y. 2007); see also *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 502 (D. Conn. 2009) (collecting cases).[11] A plaintiff

---

[10] Tresóna has included documents incorporated by reference or integral to the Complaint with its Opposition. *See* Decl., Exs. G-L. Defendants also include 17 exhibits, the majority of which have been similarly referenced in Tresóna's Complaint and only demonstrate the adequacy of Tresóna's pleading. However, Defendants also include materials not referenced or integral to the Complaint (*see* ECF 32-10, 32-11) which are improper to consider on a motion to dismiss and in any event, only go to show that issues of fact exist sufficient to deny the Motion.

[11] The case cited by Defendants from outside of this district has been viewed with skepticism: "No court in this district has ever dismissed a Lanham Act claim for failure to comply with Rule 9(b), nor has the Second Circuit ever held that it should. . . . The sole case from within this Circuit cited by the moving parties, *Volunteer Firemen's Ins. Servs. v. McNeil & Co.*, 221 F.R.D. 388, 393 (W.D.N.Y.2004), came to a different conclusion than the great majority of other courts within this Circuit who have addressed this argument." *See Indiaweekly.com.*, 596 F. Supp. 2d at 502, n.3.

adequately pleads false advertising under Rule 8 by alleging: "(1) 'the statement in the challenged advertisement is false,' (2) 'the defendants misrepresented an inherent quality or characteristic of the product,' (3) 'the defendant placed the false or misleading statement in interstate commerce,' and (4) 'the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.'" *PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, 530 F. Supp. 3d 301, 350–51 (S.D.N.Y. 2021) (quoting *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014)). Plaintiff has properly pled each element supported by facts.[12]

### B. <u>Tresóna Adequately Alleges the Falsity of Each Challenged Statement and How It Misrepresents the License Product</u>

To constitute false advertising, the statement in question can either be "(1) literally false or (2) likely to mislead or confuse consumers ('impliedly false')." *PharmacyChecker.com*, 530 F. Supp. 3d at 351 (citation omitted). When an advertisement is shown to be literally false, "consumer deception is presumed, and the court may grant relief without reference to the advertisement's impact on the buying public." *NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 405 (S.D.N.Y. 2009) (citing *Time Warner Cable, Inc. v. DIRECTV. Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). To determine falsity, "the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other." *Incarcerated Ent., LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1230-31 (M.D. Fla. 2017) (quotations and citations omitted); *November v. Time Inc.*, 13 N.Y.2d 175, 178 (1963) ("meaning depends not on isolated or detached statements but on the whole apparent scope and intent")

[12] Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud" and "pleading requirements may be relaxed when the information is exclusively within the defendant's knowledge 'as long as the plaintiff has adequately set forth the factual basis for the allegations.'" *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 511, 517-18 (S.D.N.Y. 2016) (citations omitted). Plaintiff has even met this standard, which is not applicable in any event.

(citation omitted); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 239 (2d Cir. 2001) (similar). Analysis of the "context" of individual false statements "involves questions of fact that are not properly considered at the motion to dismiss stage[.]" *Gristede's Foods, Inc. v. Unkechauge Nation*, 2008 WL 3334032, at *5 (E.D.N.Y. Aug. 8, 2008). As explained below, Defendants' statements are literally false such that it is presumed that consumers will be misled.

Even under the impliedly false standard, Tresóna also has adequately pled consumers are likely to be misled by the false advertising about ClicknClear's and Tresóna's licensing products. This includes alleging, *inter alia*: ClicknClear itself states that "[t]here is often misleading information about what rights are required" (Compl. ¶ 51); Defendants' marketing makes clear the reason to obtain such licensing is to avoid "lawsuits for music copyright infringement" by rightsholders (*id.* ¶ 100-103); Defendants exploit consumers "panic" regarding potential "unlicensed" or "unverified" results that are generated by the false contentions as to what are "needed" rights (Compl. ¶¶ 13-14, 118-119, 127); and this is a complex area of the music industry increasing the likelihood consumers will be misled. Compl. ¶¶ 8-9; Decl., Exs. H-I (webpages each noting "Music Rights are complicated"). Here, all of the statements go to the "inherent quality" of ClicknClear's and Tresóna's licenses such that they "affect[] the customer's purchasing decision." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:64 (5th ed. 2025) (citations omitted); *see, e.g., Salon FAD v. L'Oreal USA, Inc.*, 2011 WL 70591, at *6 (S.D.N.Y. Jan. 10, 2011) (similar). By each false statement Defendants are also misrepresenting characteristics of the license products advertised.

**1. Defendants' Statements are Plainly Actionable and Not Mere "Opinion"**

Defendants advertise to consumers participating in various activities including artistic swimming, cheerleading, color guard, dance, dressage, figure skating, fitness, gymnastics, indoor skydiving, jump rope, marching bands, drum corps, and vocal ensembles. Compl. ¶¶ 32-34. In

advertising, Defendants have unequivocally stated that a license for the rights to "practice alone," "[s]et choreography" or a "routine" to the song or mix, and "[p]erform the routine in public with the mix" are "***needed***" to use a song in a performance. Compl. ¶¶ 50-51, 53-54, 62-65, 76-78 (emphasis added); Decl., Exs. H-J (pages from ClicknClear's website referenced in the Complaint showing same ad made to each target group of consumers). This advertising appears prominently on ClicknClear's website and has been repeated in presentations and webinars conducted by Epp and Walsh including to the U.S. Equestrian Federation in 2025, a webinar first streamed in October 2023, a "music education webinar" presented to USA Cheer in 2022, and a presentation given to WGI (an organization with 40,000 members across the U.S.) in 2022. *Id.* ¶¶ 60, 66, 67, 89; *see also* ECF 32-15 at 5-6. Tresóna has adequately alleged this advertising is ***literally false*** as a matter of fact and law because licenses for such rights are ***not*** "***needed***" ***for all performances*** as stated in these ads to the consumers to whom Defendants advertise. That is now clear by Defendants' own unavailing attempt to rewrite their ad statements, coupled with the admissions in their brief.

Cognizant that their ads stating that consumers "***need***" to have a license for the rights identified above are false, Defendants predominantly attempt to get a free pass by claiming these are "[s]tatements of opinion about the law [that] are not actionable" (Mot. at 8). Not so. Cases, in this district and across the country, have denied motions to dismiss for similar legal-related false advertising. *See PharmacyChecker.com*, 530 F. Supp. 3d at 354 (denying motion to dismiss "false statements about [a website's] illegality"). Another court denied a motion to dismiss where the defendants advertised that they had the requisite licensing for trademarked golf courses in a golf simulator game. *See Trackman, Inc. v. GSP Golf AB*, 2024 WL 4276497, at *14-15 (S.D.N.Y. Sept. 24, 2024). This is directly analogous to Defendants' advertising about the (false) need for requisite licenses including misrepresenting what ClicknClear offers; the same result should issue.

*See id.*; *see also Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, 2019 WL 7837361, at *6 (S.D. Fla. May 22, 2019) (misleading ad that "new Timeshare Laws allowing developers to raise maintenance fees with no restriction" offering to "Let us help" was sufficiently actionable); *Plastic Molded Techs., Inc. v. Cinpres Gas Injection Ltd.*, 290 F. Supp. 2d 793, 803 (E.D. Mich. 2003) ("mix of factual assertions, conclusions, and opinion could be deemed a[n] [actionable] false or misleading representation of fact as to the parties' respective rights to use or license the overflow wells process").

Defendants' statements are not opinions but outright misrepresentations on what is legally required and what factually exists in their "stronger" licenses. *See* Compl. ¶¶ ¶¶ 48, 129-42.

### 2. Defendants Concede the Literal Falsity of the "Practise Alone" Ad Statements and Establish They are Actionable

To winter guards, marching bands, and vocal ensembles (Tresóna's core market), Defendants admittedly advertise that such consumers "need" to license "a right to . . . practise alone." Mot. at 20 (citing Compl. ¶¶ 54-61, 144).[13] Presumably because Defendants cannot say with a straight face that the law requires such a "practise alone" license, they focus their argument on a baseless "buyer beware" premise. Defendants confess that they do ***not*** include such a "right" in the standard license despite expressly advertising that they do. *See* Mot. at 21 (standard license agreement "does *not* mention the right to 'practice alone'" (emphasis in original)). In making that concession, Defendants have established that their advertising statement that "ClicknClear offer[s] all of these rights with our standard license" including the right to "practise alone" is ***literally false***.

Defendants' disavowal of their own ad representations – which they use to sell licenses – is troubling, as is their unavailing *ipse dixit* that the "practise alone" ad does not likely mislead

[13] This is precisely the same language that Defendants use to advertise both the "right to set choreography" to music and to "publicly perform" appearing ***on the very same advertisements***. Compl. ¶ 51; ECF 32-15 at 5-6.

their consumers. Mot. at 21. Because the statement is now admittedly literally false, Tresóna need not plead consumers are likely to be misled. *See PharmacyChecker.com*, 530 F.Supp. 3d at 351. Nonetheless, Tresóna ***has*** alleged facts to show consumers are likely to be misled by (false) statements that they "need" a license to "practice alone" which ClicknClear advertised it gives them (when it does not) such that they would be induced to buy a ClicknClear license based on that premise, such as to avoid lawsuits. *See* Compl. ¶¶ 50-51, 54-55, 60-61, 101-103. It is also common sense; the core activities of these consumers (mostly laypersons, like teachers, students, and athletes) are practicing routines, including alone, and Defendants' cavalier position on this point underscores their deception. Nor is the advertisement "buried" on ClicknClear's website: it appears prominently alongside graphics advertising specifically how to purchase licenses and a directive reading "GET ALL THE RIGHTS YOU NEED." *See* Decl., Ex. H at 2. Further, Defendants repeated the advertising in presentations given to consumers, prominently featuring the right as the first "required" for performance. *See, e.g.*, ECF 32-15 at 5-6.

### 3. Defendants Falsely Advertise To All of Their Target Consumers That a License to "Set Choreography" to Music is "Needed"

Defendants now claim that "[c]ombining choreography with music constitutes the creation of derivative work, which requires a license under Section 106(2) of the Copyright Act[.]" Mot. at 12. Defendants fail to cite, and Tresóna cannot locate, a single court case asserting that "combining choreography with music" constitutes a derivative work of the music copyright.

***First***, this is not what Defendants advertise in ***any*** marketing materials or presentations – they assert there is a separate "right to set choreography to music." *See* Compl. ¶¶ 14, 62-65. By relying on the derivative right section of the Copyright Act, Defendants now acknowledge there is no standalone right to set choreography to music. Thus the ad is ***literally false***. Defendants' license,

*see* ECF 32-12, does not state it contains a license to create a derivative work consisting of choreography set to music, as Defendants' have framed the right in their Motion.

***Second***, Defendants' position that setting choreography to music is a derivative work in all instances is contrary to law. Courts have consistently, clearly, and unambiguously stated "[a] work is not derivative, however, simply because it is 'based upon' the preexisting works . . . . [o]nly works that are 'recast, transformed, or adapted' into another medium, mode, or language while still representing the 'original work of authorship' are derivative." *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 748 (S.D.N.Y. 2017) (citations omitted) (collecting cases). Thus, "the question of whether a work is derivative is a question of fact" dependent on the circumstances. *See Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2024 WL 1346562, at *3 (S.D.N.Y. Mar. 29, 2024) (citation omitted) (cleaned up)); *Oracle USA, Inc. v. Rimini St., Inc.*, 2021 WL 1224904, at *14 (D. Nev. Mar. 31, 2021), *on reconsideration*, 2021 WL 9333202 (D. Nev. June 9, 2021) (whether a work "is a derivative work is a fact specific inquiry"). Defendants' citation to single 1999 article likewise only stated that a "dance ***may*** be a derivative" work (Mot. at 12 (emphasis added); *see also* 4 William F. Patry, Patry on Copyright § 12:20.10 (2025) ("Would [the choreography] be a derivative work of Stravinsky's music? Clearly not."). But Defendants do not advertise that their target consumers "may" need to license a right to "Set choreography to the mix[.]" Rather, Defendants advertise that the right to "Set choreography to the mix" or "Set a fitness routine to the mix" is "needed" by all their target consumers for all their uses, reject as unverified or invalid all third-party licenses that do not contain such a grant of right, and – *via* their deal flow – force consumers to always obtain such a "right." Compl. ¶¶ 14, 62-65, 107. This is ***literally false***, as the above authorities make clear.

To the extent Defendants claim that for a statement about the law to be false and actionable there must be a "clear and unambiguous" court or agency ruling contrary to the statement (*see* Mot. at 8 (collecting out-of-circuit cases)), the law cited above demonstrates exactly that: an ad that states in absolute terms that a license is "needed" every time choreography is set to music (belatedly justified on the Motion as an alleged derivative work) ***is*** contrary to law, as each case is fact specific. Worse, Defendants' LVS rejects as unverified or invalid all third-party licenses that do not contain such a grant of right. Defendants' own authorities – none of which are from this Circuit in any event – fail to support their position, as the advertising did not provide absolute (erroneous) statements about the law, but instead properly denoted that the underlying legal concept was fact specific. For example, in *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, which Defendants have selectively quoted, the advertising stated the product in question "***could*** obtain copyright protection and outlined a strategy whereby MLSs ***could*** register for protection with the Copyright Office." 948 F. Supp. 2d 538, 554 (D. Md. 2013) (emphasis added). That is a far cry from Defendants' false advertising here that this right is "needed" as an absolute matter for all its target consumers (and use of an LVS tool that rejects all third party licenses that do not contain such a grant of right) when courts have explicitly found such a right is ***not*** applicable in all circumstances.[14]

All performers who use choreography in their routines are being told in no uncertain terms they must get such a license, unaware that is not the case. This belief is even more likely to occur

[14] Each of Defendants' other cited cases are inapposite for similar reasons. *See* Mot. 11-12 (citing *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1356-57 (S.D. Fla. 2002), *aff'd*, 54 F. App'x 492 (11th Cir. 2002) (advertising in question "***speculated*** about the effect that a lifting of the Cuban embargo restrictions would have on the trademark rights of Plaintiff" (emphasis added)); *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*., 173 F.3d 725, 731-32 (9th Cir. 1999) ("correct application of [advertised law] ***was not knowable*** to the parties at the time that First American made the licensure statement"); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir. 1990) (advertising about compliance with FDA regulation that had not yet been interpreted by the FDA)).

given that ClicknClear's advertisements take place alongside the scare tactics Defendants employ in their marketing materials and at conferences to raise consumers' fear of lawsuits from rightsholders. *See* Compl. ¶¶ 101-103. Further demonstrating falsity, for the many years that Tresóna has been a licensing agent, no separate "choreography" license has been required by rightsholders, *id.* ¶ 74, and Tresóna has not located a single lawsuit filed by a rightsholder against these targeted consumers for creating an unauthorized derivative work by the setting of choreography to music.

Defendants' citation to Nimmer with respect to this right (*see* Mot. at 12), for the proposition that "'dramatization' constitutes a 'derivative work'" only further demonstrates the misleading nature of their absolute advertisements. Defendants fail to cite Nimmer's statement ***in that same section*** that "choreographic work[s] devoid of story or content . . . do not constitute dramatic works." Nimmer on Copyright § 2.06 (2025). Accordingly, to the extent Defendants are now rewriting their ad to say the "right to set choreography" only applies to dramatic works, (which it does not say), that then conflates this purported right with the separately advertised public performance right discussed below, which Defendants also now rewrite to limit to a "dramatic" public performance right. Defendants' position on the Motion only serves to show the advertising as they reframe it is literally false for another reason – the ad says these are two separate rights.

**4. Defendants Falsely Advertise All of Their Target Consumers "Need" to License a Public Performance Right Separate from PRO Licenses**

The third of Defendants' false advertising statements (made to all target consumers) states that the right to "[p]erform the routine in public with the mix" is "***needed***" by all its target consumers and that ClicknClear "offer[s] ***all of these rights*** with our ***standard*** license" Compl. ¶¶ 76-78 (emphasis added); Decl., Exs. H & I (showing same ad directed at each group of target consumers). In this advertising they state, "PRO 'Performing Rights' Societies ONLY offer the

right to play music, publicly" and that "[t]he rights needed to perform sports and fitness routines to music go far beyond the simple (and misleadingly named) 'performing rights license' needed by venues to 'perform' music[.]" Compl. ¶¶ 84-85. Defendants recognize the deceptive nature of these statements, as they now caveat that what they meant (but did not so state in their advertising) is that ClicknClear offers a "dramatic" public performance right (or "grand" right as it is known) as part of its "standard" license and concedes that nondramatic performance rights are within the sole purview of PROs. *See* Mot. at 14-15; *see also* Compl. ¶¶ 68-69 (Epp failing to acknowledge whether winter guard license sought was dramatic despite Tresóna's inquiry). And nowhere does ClicknClear's standard license state it is granting a "dramatic" or "grand" performance license, demonstrating ***literal falsity***. *See generally* ECF 32-12 (ClicknClear's standard license).

But the core falsity of this advertisement again is in Defendants' assertion that a separate performance right is "***needed***" ***in all instances*** (and again rejecting as unverified or invalid all third-party licenses that do not contain such a grant of right), apart from any PRO license. Defendants concede, "there is room for differences of opinion as to whether dramatic performance licenses are needed." Mot. at 16. That is precisely the point. Defendants' advertising does not leave any room for differences of opinion. Rather, as with the "choreography" right discussed above, Defendants mislead the market by claiming to ***all*** its targeted consumers that the (apparently) "dramatic" public performance right ClicknClear licenses (*i.e.*, not one that can obtained from the PROs) is "***needed***" or required across the board. Compl. ¶¶ 76-78; ECF 32-15 at 5-6.[15]

And again, the law is contrary to Defendants' statement and demonstrates that it is literally false. Courts have been explicit and unambiguous that ***not every*** public performance of music with choreography or movement is "dramatic" requiring a separate license from the licenses issued by

[15] It is also false that nondramatic public performance rights are needed in all situations, such as where there is a statutory exemption, as Defendants' admit. *See* Mot. at 16-17.

the PROs. Indeed, the Second Circuit found that performance of songs covered in a show that had ten scenes including costuming was "non-dramatic" and therefore covered by the ASCAP license (a PRO) the defendant already had. *Apr. Prods., Inc. v. Strand Enters.*, 221 F.2d 292, 296 (2d Cir. 1955). In Defendants' own authority, the court found that even it "cannot determine whether the Dramatic Performances actually are 'dramatic' in nature such that a grand rights license is necessary." *Willis v. Scorpio Music (Black Scorpio) S.A.*, 2016 WL 3460282, at *4 (S.D. Cal. June 24, 2016).[16] Dramatic works require the telling of a story – which would be inapplicable, for example, to dance routines with no story or plot. *See id*.; *see also* Decl., Ex. K (ASCAP license listing "dance" as irrelevant to whether performance is dramatic). Thus, there have been "clear and ambiguous" rulings holding a "dramatic" performance right is ***not*** "needed" to be licensed for all performances by the target groups, many (if not most) of which do not tell any story.

Defendants' *ipse dixit* argument that consumers are not likely to be misled due to the purported sophistication of the organizations (Mot. at 26) is misplaced, as the "effect on consumers . . . raises factual questions that are not well suited for resolution on a motion to dismiss." *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 62 (2d Cir. 2022) (citation omitted). These organizations also have primary target audience ***members*** (*i.e.*, teachers, etc.) to whom Defendants advertise. In all events, Defendants' ***own*** statements acknowledging how easy it is for consumers to be misled in this market defeat their own argument. *See* Compl. ¶ 51 ("[t]here is often misleading information about what rights are required for ensembles"); ¶ 118 (Epp stating LVS results causes consumers "panic"); *e.g.*, Decl., Exs. H-J (ClicknClear website pages each stating directly below the heading "Music rights are complicated. ClicknClear makes it simple.").[17]

---

[16] Defendants cite the same authority as they do for the "choreography" right regarding legal opinions, which authority is distinguishable for the same reason, as here there have been court rulings clearly and unambiguously contrary to Defendants' advertising. *See supra* Sec. II.B.1, II.B.3, & n.14 (distinguishing cases).

[17] Defendants argue the "public performance" right has not been sufficiently disseminated, which fails for the reasons

### 5. The LVS Capitalizes on the Above False Advertising

Defendants use the LVS as a marketing tool to perpetrate the false advertising that all the targeted consumers need licensing for the above-referenced superfluous rights. Admittedly, the LVS can declare other parties' licensing products and services (including Tresóna's) "unverified" or "invalid" after "automatically scan[ning] the upload licenses to confirm the presence or absence of certain basic information" including most importantly "***evidence of particular grant of rights***." Mot. at 5 (citing Compl. ¶¶ 107, 113) (emphasis added). Tresóna alleges that the LVS "automatically" scans for the "right to set choreography" to music and "right to perform the routine in public with the mix," which Defendants advertise are "needed" for all of ClicknClear's target consumers, as well as for the "right to practise alone" at least with respect to marching bands, vocal ensembles, and winter guards. *See* Compl. ¶¶ 113, 127; *see also* ECF 32-5 (ClicknClear website stating above rights "needed" and that "LVS [] verifie[s] all rights against the license for each song"). Defendants concede there is no practice alone right, and thus that ad is false, and the discussion above shows that Defendants' advertisement that the other "two" rights are "needed" in all situations is also false.

Critically, Tresóna has pled that its license products have been falsely declared invalid or unverified as a result of Defendants' deceptive tactics and false depiction of rights. *See* Compl. ¶¶ 13-14, 61, 158. The LVS (which Defendants admit is a "conversion" tool, *id.* ¶ 119) misleadingly informs consumers Tresóna's licensing goods and services do not contain these non-existent or unnecessary rights (advertised as "needed" in all situations) and the consumer must therefore purchase additional licenses beyond what Tresóna already licenses. Because ClicknClear operates

discussed below, *see infra* Sec. II.C., and that consumers would not be misled, which fails for the same reasons discussed above, *see supra* Sec. II.B.

the LVS, consumers would therefore be far more likely to purchase future licenses from ClicknClear instead of Tresóna, falsely believing because of LVS that Tresóna's licenses are incomplete for their purposes. Thus, the LVS itself delivers false advertising and is a deceptive practice to Tresóna's direct detriment.

Defendants' website (attached to their Motion, ECF 32-5) demonstrates this deception. It explicitly states that "license(s) ***must*** authorize you as a participant to use the music for," (emphasis added) *inter alia*, "Choreograph your routine" and "Perform your routine"; that the "LVS **AUTOMATICALLY** reads the submitted license files to check" that licenses contain such rights (emphasis in original); and that a license is only considered "Licensed" (a green result) when "LVS has verified all rights for each song" – otherwise, the LVS returns an "Unverified," "Partially Verified," or "Unlicensed" result (yellow and red results). ECF 32-5 at 2-3.

### 6. Defendants Make False Statements About Tresóna's Products

Defendants twist themselves into knots attempting to excuse their false advertising about Tresóna's licensing by discussing it out of context and in isolation. These efforts are unavailing. Plaintiff has more than adequately alleged that each statement about Tresóna is literally false, misrepresents characteristics of Tresóna's product, and when taken together in the context of the above facts is likely to mislead consumers into believing Tresóna's licensing is insufficient for their "needs" which may only be licensed from ClicknClear. *See, e.g., Salon FAD*, 2011 WL 70591, at *6 (statements that hair care products could only be purchased in salons "relate sufficiently to an inherent and material characteristic of the product" because "the statements imply that the quality of the products is so superior that they are available only through professionals in hair care").

***First***, Epp falsely advertised to consumers that "***Tresóna do [sic] not use a pre-cleared model***" while ClicknClear does. Compl. ¶ 37. This is false because Tresóna does use pre-cleared

arrangements. *Id.* ¶ 38. Epp's use of the word "model" does not make the statement any less untrue. ***Second***, Defendants advertised falsely that "Tresóna ***does not*** offer a full license but rather only a certificate." Compl. ¶ 133 (emphasis added). This is literally false because Tresóna ***does*** issue full licenses. *Id.* Defendants again grasp at straws to state the Tresóna does in fact offer certificates (Mot. at 23), but again that does not make Defendants' statement that Tresóna ***does not*** offer a full license any less untrue. ***Third***, Defendants' Motion acknowledges the advertisement "that the licenses [ClicknClear] offers are stronger than those offered by Tresóna as they cover 'all' of the rights necessary" (*id.* at 24 (quotin Compl. ¶ 131)). But they relegate to a footnote ClicknClear's touting itself as the "only legitimate music licensing solution for performance sports" (*id.*, n.25), and avoid any discussion about how this statement is factually false when viewed in the context of the false advertising of rights campaign and the LVS discussed above.[18] Defendants also ignore the related false statement made by Epp in or around January 2024 that Tresóna cannot offer the required "licensing solutions" to participants in performance sports. Compl. ¶¶ 131, 134.

As alleged throughout Tresóna's Complaint, Tresóna has been successfully offering licensing solutions to ClicknClear's targeted consumers for years, and purported key performance rights which ClicknClear claims are "needed" "are illusory, unnecessary, and/or incapable of being licensed by ClicknClear in the U.S." *Id.* ¶ 132. Thus, the comparison between the two companies' licenses is deceptive and misleading, and this is the important context that Defendants seek to avoid having reviewed – as it is the crux of Tresóna's claims. ClicknClear's statements that Tresóna cannot offer the full scope of rights "necessary" for each of the target performance sports

---

[18] Contrary to Defendants' assertions, Tresóna properly made these allegations "upon information and belief" because the specific oral statements Defendants made in presentations (Compl. ¶ 97) about Tresóna, where not captured in publicly available written materials, is in Defendants' control, and in any event, other facts pleaded in the Complaint "makes the inference of [Defendants'] culpability plausible." *Asset Co IM Rest*, 2025 WL 919489, at *11 (denying motion to dismiss) (citation omitted); *Oec Freight (NY), Inc. v. Storlie Funiture Distributors, LLC*, 2025 WL 1617456, at *3-4 (S.D.N.Y. June 6, 2025) (same).

is false, is predicated on false claims of what rights are necessary for a given use and offered from ClicknClear. Far from being "puffery," these are false and actionable factual contentions.[19]

**7. False Advertising on Lawsuits is False And Inextricably Tied to the Above**

Defendants' statements about copyright infringement lawsuits relating to music licensing are part of its misleading marketing to consumers to induce them to buy licenses. *See* Compl. ¶¶ 95-105. Instead of examining these statements in context (as required), they again focus on isolated portions of statements, such as "[t]here have been LAWSUITS for music copyright infringement[.]" Mot. at 20. But by quoting only a sanitized portion of the statement, they avoid the contextual language that exposes its inaccuracy and which demonstrates that the statement is part of a proposed commercial transaction. Notably, this statement appears on the very same webpages advertising that the above-referenced rights are "needed" in all circumstances (*see* Decl., Exs. H-J (showing same advertising to each target consumer group)), misleading consumers to think, incorrectly, that they will be sued if they do not purchase such licenses. Similarly, Defendants avoid that ***directly above*** the "Music Copyright Education" section is a button labeled "License Music," where consumers can purchase licenses from ClicknClear. ECF 32-8 at 3. Thus, Tresóna has pleaded at length how these statements relate to commercial transactions that encourage consumers to purchase ClicknClear's licenses and engage with the LVS. *See, e.g.*, Compl. ¶¶ 13-14, 100-103, 118-120.[20] In any event, an analysis of the "context" of individual false

[19] In any event, "[d]etermining whether each of them is puffery requires a factual inquiry into how users interpreted [defendant's] claims[.]" *Int'l Code Council, Inc.*, 43 F.4th at 59 ("[w]e disagree with the district court that, at this early stage, these accuracy-related statements can be deemed puffery, which would render them nonactionable under the Lanham Act") (citation omitted).

[20] The out-of-circuit cases cited by Defendants in support of their argument that the lawsuit statements do not propose a commercial transaction are inapposite. Mot. at 20. *Edward Lewis Tobinick, MD v. Novella*, for example, involved a blog post by a doctor about a controversial medical treatment criticized by various media outlets. *See* 848 F.3d 935, 940 (11th Cir. 2017). The plaintiff in that case did not allege that the author was offering a competing medical treatment or that the author's website invited commercial transactions relevant to the post. *Id.* In *Goodman v. Does*, the false advertising claim in that case was not dismissed "despite allegations that the website was intended to drive traffic and increase monetary value," as Defendants contend. Mot. at 20 (citing *See* 2014 WL 1310310, at *2 (E.D.N.C.

statements "involves questions of fact [] not properly considered at the motion to dismiss stage[.]" *Gristede's Foods*, 2008 WL 3334032, at *5. Lastly, contrary to Defendants' conclusory statements (Mot. at 20), Tresóna sufficiently alleges both that these statements affect customer's purchasing decisions because they scare consumers into purchasing licenses premised on unnecessary rights by suggesting they are needed to avoid these lawsuits, and such statements are linked to a characteristic of the license product, namely, suggesting the license will protect consumers from these nonexistent suits. *See supra* Sec. II.B.3-4.

### C. <u>Tresóna Adequately Alleges Dissemination of Defendants' False Advertising</u>

With respect to the Lanham Act's third element regarding "commercial" advertising, the statement must only be "disseminated sufficiently to the relevant purchasing public." *Gen. Sec., Inc. v. Com. Fire & Sec., Inc.*, 2018 WL 3118274, at *7 (E.D.N.Y. June 25, 2018) (citations omitted). The "touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act" and the only question at the pleading stage is "whether the allegations in the complaint make it plausible that Defendants' actions were part of an organized campaign to penetrate the market." *Id.* (citation omitted). Tresóna has sufficiently alleged the "organized campaign" embarked on by Defendants for each of the false statements; namely, *inter alia*, via (1) materials presented to this relevant purchasing public online, and either in person or *via* remote teleconference (Compl. ¶ 19(c)); (2) industry conferences, presentations, and events (*id.* ¶¶ 19(c), 60, 67, 70, 88, 89); (3) Defendants' LVS (*id.* ¶¶ 106-128); (4) social media posts and outreach (*id.* ¶¶ 37, 89); (5) webinars (*id.* ¶ 89); and critically (6) Defendants' website (*id.* ¶¶ 51-56, 59, 63-66, 77-78, 84-86). *See, e.g.*, *Enigma Software Grp. USA, LLC v. Bleeping*

---

Mar. 28, 2014)). Rather, the court simply held that there is no *per se* rule about ***any*** statements on ***any*** website, and that the plaintiff had failed to allege commercial interest in the content of the website at issue. *Id.*

*Computer LLC*, 194 F. Supp. 3d 263, 296 (S.D.N.Y. 2016) (statements publicly posted to internet forum "'disseminated sufficiently' to the relevant consumer market").

Defendants' arguments to the contrary, including that Tresóna must specify the precise number of people who viewed their false advertising (Mot. at 13, 17-18, 21-24), is unsupported by case law is unsupported by case law. *See Gen. Sec., Inc.*, 2018 WL 3118274, at *7. Whether statements are sufficiently disseminated to "the relevant purchasing public" is often a question of fact where, as here, specialized markets are involved. *Id.* (distinguishing *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002), cited by Defendants, as it was decided on summary judgment, not a motion to dismiss); *see also Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) (determination of the "relevant purchasing public" determined at trial); *American Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993) (a relevant factor is the "specifics of the industry"). Tresóna has identified the relevant, specialized purchasing public: "a niche market comprised of, inter alia, scholastic, community, and professional organizations, whose members include vocal ensembles, marching bands, color guards, show choirs and similar performing groups throughout the United States." Compl. ¶¶ 2, 32-34. Indeed, even a small number of potential purchasers will suffice. *Apotex, Inc. v. Accorda Therapeutics, Inc.*, 2014 WL 5462547, at *5 (S.D.N.Y. Oct. 23, 2014); see also *Gen. Sec., Inc.*, 2018 WL 3118274, at *7; *Seven-Up Co.*, 86 F.3d at 1386 ("Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act."); *Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F.Supp. 1005 (S.D.N.Y. 1994) (single letter from a manufacturer to a potential customer could constitute "commercial advertising or promotion").

### D. Tresóna Adequately Pleads Its Damages and Injuries

To plead injury, Tresóna need only "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[.]" L*exmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); *Unlimited Cellular, Inc. v. Red Points Sols*. SL, 677 F. Supp. 3d 186, 201 (S.D.N.Y. 2023) (damages sufficiently pled where the "[p]laintiff allege[d] that the removal of product listings from an e-commerce platform . . . injured [p]laintiff's sales and reputation."). Here, Tresóna's Complaint comprehensively pleads the damage it has suffered due to Defendants' conduct, including without limitation through: diversion of consumers to Defendants' products and services via harmful statements and the LVS (see, e.g., Compl. ¶¶ 137, 157, 169) and harm to Tresóna's reputation and goodwill (Complt. ¶¶ 135-136, 169). Epp even admitted she intended "to do a lot of harm to [Tresóna]." Id. ¶¶ 169. Defendants do not – and cannot – explain how these allegations do not satisfy the pleading standard.

## III. Tresóna Sufficiently Plead Causes of Action Under New York State Law

GBL § 349 creates liability for a broad scope of conduct including any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). A plaintiff must allege the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). Tresóna has adequately alleged Defendants' "acts or practices are deceptive or misleading in a material way" and its injury (both as explained above, mirroring the Lanham Act) sufficient to plead its state law claims. See Actava TV, Inc. v. Joint Stock Co.,, 412 F. Supp. 3d 338, 352 (S.D.N.Y. 2019) (denying motion to dismiss GBL claims). None of Defendants' arguments regarding the state law claims carry water.

### A. Tresóna Sufficiently Alleges Defendants' Conduct is "Consumer Oriented"

GBL § 349 "governs consumer-oriented conduct and, on its face, applies to virtually all economic activity." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999) (citation omitted). "Consumer-oriented" conduct subject to Section 349 includes all "acts or practices [that] have a broader impact on consumers at large," and includes conduct aimed at business organizations as well as individuals. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25-27 (1995). Critically, in *Himmelstein*, the New York Court of Appeals expressly held that the "consumer-oriented element" does ***not*** depend on the use of a good or service – *i.e.*, whether the good or service was for personal use or business use – rather, "what matters is whether the defendant's allegedly deceptive act or practice is directed to the consuming public and the marketplace." *See* 37 N.Y.3d at 177-78 (that defendant "made [its services] available for sale to the general public, including through its website and a public, online shopping service" is sufficient). Relying on an erroneous, outdated interpretation of "consumer-oriented conduct" – and ignoring the expansive applicability of the term as set forth above – Defendants argue that ClicknClear is immune to claims under GBL § 349 because its music licensing service and LVS system are purportedly not offered "for personal, family or household use[.]" Mot. at 10-11. This interpretation was overruled by the New York Court of Appeals in *Himmelstein*. *See supra* n.1; *see also Edmar Fin.*, 2023 WL 3570017, at *19 (expressly noting the change in the law post-*Himmelstein*). Defendants' failure to cite the correct standard espoused by the highest court of the state of New York, which abrogated the standard Defendants cite, is troubling.

Tresóna alleges that Defendants are making false and misleading statements about licensing rights and licensing requirements under U.S. copyright law *via* numerous statements and the operation of the LVS in a manner that harms consumers and Plaintiff. *See, e.g.*, Compl. ¶¶ 5, 35-39, 114-115, 130; *id.* ¶ 16 ("Defendants are succeeding in deceiving and misleading consumers

and inducing them to purchase ClicknClear products and services, to the detriment of the targeted audience[.]"); *id.* ¶ 49 (ClicknClear "deceiv[es] the consumers and [the] public with materially false statements about music licensing, its product and services, and the products and services of Tresóna"). This is sufficiently pleaded "consumer-oriented" conduct.

### B. Tresóna Sufficiently Alleges Deception in New York

Defendants next attempt to argue that Tresóna has not sufficiently alleged that deceptive conduct occurred in New York. But it is not necessary that New York residents be ***the target*** of the conduct, *see People ex rel. Spitzer v. Telehublink Corp.*, 301 A.D.2d 1006, 1009 (N.Y. App. Div. 2003), only that at least "some part of the underlying transaction . . . occur[red] in New York State." *Mountz v. Global Vision Prods., Inc.*, 3 Misc.3d 171, 177 (Sup. Ct., N.Y. Cty. 2003); *see also Meachum v. Outdoor World Corp.*, 235 A.D.2d 462, 463 (N.Y. App. Div. 1997) ("Although . . . much of the purported fraudulent activity occurred in [Pennsylvania], the complaint alleges at length that the defendants engaged in deceptive conduct in New York by mailing misleading literature to New York residents); *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 168 (S.D.N.Y. 2014) (denying motion to dismiss where plaintiffs "pleaded sufficient facts that, at the very least, give rise to a plausible inference that the allegedly deceptive transaction occurred in New York and that the defendant's conduct fell within the ambit of the 'legislative intent to address commercial misconduct occurring within New York.'") (citation omitted). Applying this standard, this case undoubtedly involves "a series of allegedly deceptive transactions that occurred in New York and implicate[d] the interests of New York." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013). See supra Sec. I (describing the myriad ways Defendants have "targeted consumers in New York"); see also Compl. ¶¶ 19(a)-(g), 35, 60, 70, 166 (same).

### C. Defendants' Deceptive Practices Through the LVS Violate The GBL

Defendants' statement that Tresóna does not have standing to assert an unauthorized legal advice claim (Mot. at 28) is a strawman. Tresóna's claims are not under any unauthorized practice of law cause of action. *See* Mot. at 28 (citing *Lundy v. Hochberg*, 91 F. App'x 739, 742-45 (3d Cir. 2003)). Rather, Defendants' purported provision of legal services (without license and premised on false rights) constitutes a deceptive practice under GBL § 349, and it has long been the law "corporate competitors" as here "have standing to bring a claim under this [statute] ... so long as some harm to the public at large is at issue[.]" *Securitron*, 65 F.3d at 264 (citations omitted). Tresóna has adequately alleged it is a competitor of ClicknClear (Compl. ¶¶ 2, 30-34) and that the unauthorized provision of legal services harms the public at large by disseminating false information about U.S. law. *Id.* ¶¶ 48-49, 51, 119, 141.

In addition to the false advertising above (all actionable under GBL), the unauthorized provision of legal services ***itself*** is a violation of GBL § 349. In *Sussman v. Grado*, the court found a violation where the defendant paralegal's actions "engaging in the practice of law by rendering legal services . . . constituted a deceptive act 'likely to mislead a reasonable consumer acting reasonably under the circumstance" and that "'the acts or practices have a broader impact on consumers at large[.]'" 192 Misc. 2d 628, 632-34 (Dist. Ct., Nassau Cty. 2002) (defendant's provision of legal services "when she was not qualified or legally able to prepare the necessary papers violated section 349 of the General Business Law") (citations omitted). That is precisely what Tresóna has alleged here. Defendants acknowledge ClicknClear advertises the LVS's purpose to "verify that [activity participants] licensed their music correctly ***in accordance with copyright law***," and providing "an ***auditable trail*** of music licensing of all necessary rights is being verified." Mot. at 25 (quoting Compl. ¶ 127 (emphasis added)). Defendants describe the services as "verify[ing]" whether a license contains "particular grants of rights" which is exactly what

lawyers do. Mot. at 5. Defendants further acknowledge that Tresóna alleged the LVS "is merely a 'tool that is incapable of providing [] legal advice" thus adequately alleging why such advertising about the LVS is false. *See* Mot. at 28 (quoting Compl. ¶ 117). Defendants cannot escape these statements. In connection with ClicknClear's application to its Registration, Epp declared – under penalty of perjury – that ClicknClear "has a bona fide intention ***and is entitled***, to use the mark in commerce on or in connection with the identified goods/services" including "Legal services" and "legal advice." *See* Decl., Ex. L at 7-8 (emphasis added). Regardless of the way it matured to registration, the Registration remains on the Principal Register, listing such services to this day.

Nor is it true that the provision of legal advice without a license is not actionable commercial speech under GBL, as demonstrated by *Sussman*. *See* 192 Misc. 2d at 634. Defendants' lead case, *Bd. of Trs. of State Univ. of New York v. Fox*, has nothing to do with false advertising or deceptive practices under the Lanham Act or New York law, but rather considered a First Amendment claim where the Supreme Court found a state university's legal proclamation was non-commercial speech in the context of that claim – plainly, a red herring. *See* 492 U.S. 469, 482 (1989). Finally, Defendants' reference to the disclaimers buried in ClicknClear's Terms of Use and on a separate "FAQ" page, *see* Mot. at 28, provides Defendants no free pass. "[T]he sufficiency of [a] disclaimer depends upon its effect on consumers, which raises factual questions that are not well suited for resolution on a motion to dismiss." *Int'l Code Council, Inc.*, 43 F.4th at 62 (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (reversing District Court's decision to dismiss GBL claim on grounds of disclaimer)).[21]

[21] Each of Defendants' cited cases is plainly distinguishable. *See* Mot. at 28 (citing *Morales v. SportsEngine, Inc.*, 2025 WL 2662134, at *5 (S.D.N.Y. Sept. 17, 2025) (disclosure of a fee is "added as a line item in their shopping cart immediately before a purchase"); *NYU Langone Health Sys. v. Northwell Health, Inc.*, No. 23-CV-5032 (VEC), 2024 WL 898941, at *1 (S.D.N.Y. Mar. 1, 2024) (clarifying language was "directly underneath" the misleading claim)).

**D. <u>Tresóna's GBL Claims are Not Time-Barred</u>**

Grasping for straws, Defendants incorrectly argue that the three-year statute of limitations for Section 349 claims accrues on the "alleged date of deception" or the "deceptive acts," such that any claims premised on Defendants' bad acts prior to July 28, 2022 should be dismissed. Mot. at 31 (citing *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 788-89 (2012)). But *Corsello* stands for the proposition that a GBL claim accrues "when the plaintiff ***was injured***." *Id.* at 790 (emphasis added); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007) (citation omitted) (accrual "when all of the factual circumstances necessary to establish a right of action have occurred, so that plaintiff would be entitled to relief") (citation omitted); *Enzinna v. D'Youville Coll*., 84 A.D.3d 1744 (N.Y. App. Div. 2011) (in claim false statements in a promotional catalog injury only occurred when plaintiffs learned "expectations were actually not met"); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2007 WL 1601491, at *15 (S.D.N.Y. June 4, 2007) (accrual only on injury or when plaintiff knew or should have known of injury).

Here, Tresóna alleges that its injury is within the limitations period – namely at the end of 2023 (Compl. ¶¶ 45-46), when it became apparent ClicknClear's targeting of consumers, which overlap with Tresóna's, had induced a false purchase of a license and thus consumers' "expectations were actually not met[.]" *Enzinna*, 84 A.D.3d at 1744. The full extent of injury will be determined in discovery in connection with the number of Tresóna licenses that have been unverified or invalidated by the LVS. In all events, Tresóna has alleged deceptive practices occurring frequently from July 28, 2022 to present actionable claims under GBL and any that predate it would still be actionable under the Lanham Act.[22]

---

[22] Even if there were a question of fact as to the timeliness of the GBL claims here – which there is not – dismissal would not be appropriate at this stage. *See Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 485 (E.D.N.Y. 2011).

## IV. Tresóna More Than Adequately Pleads Its Claims Against Epp and Walsh

"Employees who direct, control, ratify, participate in, or are the moving force behind a Lanham Act violation can be held personally liable for those violations." *Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 426 (S.D.N.Y. 2013); *see also Ramada Franchise Sys., Inc. v. Boychuk*, 283 F.Supp.2d 777, 788 n.14 (N.D.N.Y.2003) ("corporate officer directly participating in a Lanham Act violation will be held liable for damages") (collecting cases); *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 354 (E.D.N.Y. 1998) (personal liability if officer is "conscious force" behind violation)) (citation omitted). "[P]laintiffs need not show that an individual defendant 'consciously sought to commit a trademark violation.'" *Merck Eprova AG*, 920 F. Supp. 2d at 427 n.8 (citing *Calvin Klein Jeanswear Co. v. Tunnel Trading*, 2001 WL 1456577, at *6 (S.D.N.Y. Nov. 16, 2001)).

Defendants' cite solely to *Edmondson v. Velvet Lifestyles, LLC*, decided on summary judgement, ***not*** at the pleading stage (where the plaintiff failed to show "***any*** evidence" of involvement in the violation by the individual defendant) to support their conclusory argument that Epp and Walsh were not "moving forces" behind the false and misleading statements at issue. *See* 43 F.4th 1153, 1164 (11th Cir. 2022). Here, by contrast, Tresóna has pled that Epp and Walsh were at the helm of all the false and misleading statements. Epp (founder, CEO and majority shareholder) and Walsh ("Investor/Director") are ClicknClear's sole officers and directors. *Id.* ¶¶ 28-29. At the direction and with the assistance of Epp and Walsh, ClicknClear obtained the Registration with the USPTO for "Legal Services." *Id.* ¶ 19(b). Epp and Walsh travel to New York to promote ClicknClear and to solicit licensing relationships. *Id.* ¶ 19(e); *see also* Decl., Ex. F (presentation naming Epp and Walsh as presenters). Epp and Walsh regularly post videos to social media disseminating the false and misleading statements. *Id.* ¶ 67. These allegations are more than enough, at the pleading stage, to state claims for their individual liability. *See Chanel, Inc. v. Italian*

*Activewear of Fla., Inc.*, 931 F.2d 1472, 1478 (11th Cir. 1991) (personal liability for "president and chief executive officer," who falsely "advertised the goods as Chanel products in local publications" and "operated the showroom from which the goods were sold").

**V. In the Alternative, Tresóna Should Be Granted Leave to Amend**

The Complaint is wholly sufficient in all respects and the Motion should be denied. However, in all events, Tresóna should be afforded to an opportunity to add additional facts it has discovered in support of its claims in advance of any dispositive adverse action. Plaintiff can add additional facts to the pleading, including further facts regarding rightsholders that would not and do not license to ClicknClear on a blanket basis the right to create a choreographic derivative work or grand rights, such that they could be included in ClicknClear's "standard" license; facts regarding consumers to whom Defendants made false statements, including about Tresóna, and more facts regarding the LVS. Such an amendment would be proper under governing law. *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 453 (S.D.N.Y. 2016) (amendment for additional facts permitted 13 months after the initial filing)[23]; *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (instructing to grant leave to amend).

**CONCLUSION**

For the foregoing reasons, Tresóna respectfully requests that this Court deny all prongs of the Motion in its entirety.

[23] While Plaintiff discovered the relevant additional facts after the filing of the Complaint, even if it had knowledge of such facts at the time of the initial pleading, amendment is appropriate. *See Affiliated FM Insurance Co. v. Liberty Mechanical Contractors, Inc.*, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (party "need not prove [] they uncovered new facts or law" to amend) (citations omitted).

DATED: New York, New York
November 20, 2025

Respectfully submitted,

Mitchell Silberberg & Knupp LLP

By: */s/Christine Lepera*
Christine Lepera
Lindsay R. Edelstein
Andrew Nietes
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239
Email: ctl@msk.com
Email: lre@msk.com
Email: afn@msk.com

*Attorneys for Tresóna Multimedia, LLC*