UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRESÓNA MULTIMEDIA, LLC,

Plaintiff,

v.

PRE-CLEARED LIMITED D/B/A CLICKNCLEAR, CHANTAL EPP, and DAVID WALSH,

Defendants.

ORDER

25-cv-6202 (GBD)

GEORGE B. DANIELS, District Judge:

Plaintiff Tresóna Multimedia, LLC, ("Plaintiff" or "Tresóna"), brings this action against Defendants Pre-Cleared Limited (d/b/a ClicknClear), Chantal Epp, and David Walsh (collectively, "Defendants" or "ClicknClear"), alleging false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a) and New York General Business Law ("GBL") § 349, and deceptive acts and practices in violation of GBL § 350-a. (*See* Complaint, "Compl.", ECF No. 1.) ClicknClear moves to dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). (Defs.' Mot. to Dismiss, "Mot.", ECF Nos. 30–33.) ClicknClear's motion to dismiss is GRANTED.

## I. FACTUAL BACKGROUND[1]

### A. The Parties

Tresóna Multimedia is a music copyright licensing agency with a principal place of business in Scottsdale, Arizona. (Compl. ¶ 21, 25.) Since 2009, Tresóna has been issuing music

[1] All facts in this motion to dismiss are taken from Plaintiff Tresóna's Complaint, which the Court must accept as true. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 104 n.1 (2d Cir. 2023).

licenses, on behalf of music rightsholders, to a "niche market" of "scholastic, community, and professional organizations." (*Id.* ¶ 2.) Tresóna's main clients "include vocal ensembles, marching bands, color guards, show choirs, and other similar performing arts groups." (*Id.*) The licenses issued by Tresóna give clients various rights to use certain musical works and sound recordings, including for "print, synchronization, dramatic performance, and remixing." (*Id.* ¶ 26.) Tresóna grants and administers these music licenses, and the use of Tresóna's licenses generate royalties for the rightsholders, songwriters, and creators of the musical works. (*Id.* ¶ 27.)

ClicknClear is a similar music licensing company, originally from the United Kingdom, that entered the U.S. market in or about 2016. (*Id.* ¶ 3.) Chantal Epp is ClicknClear's Chief Executive Officer and majority shareholder, and David Walsh is the company's "Investor" and "Director." (*Id.* ¶ 29.) In its early stage, ClicknClear focused primarily on operating a website that allowed consumers to purchase permanent downloads of music with the added permissions to use the downloads in "non-commercial remixes." (*Id.* ¶ 35.) In or around mid-2021, ClicknClear attempted to move into the "niche market" that Tresóna operates in – issuing licenses for musical works and sound recordings to scholastic, community, and professional organizations. (*Id.* ¶ 36.)

**B. ClicknClear's Services**

ClicknClear offers licenses to various performance sports in which teams perform alongside recorded music, including artistic swimming, cheerleading, color guard, dance, dressage, figure skating, fitness, gymnastics, indoor skydiving, jump rope, and band/vocal ensembles. (*Id.* ¶ 33, 34.) ClicknClear's website informs consumers that "[t]here is often misleading information about what rights are required for ensembles to make an arrangement of music to accompany your routine." (*Id.* ¶ 51, Figure 3.) ClicknClear also enumerates "the rights that are needed to use a song in your performance," which include the right to 1) "[p]ractise alone;"

2) "[s]et choreography to the song(s);" 3) "make copies of the arrangement for personal (practise) use; and 4) "[p]erform the routine in public with music: practise and competition." (*Id.* ¶ 51, Figure 3.) ClicknClear assures its consumers that "ClicknClear offer[s] all of these rights with our standard license." (*Id.* ¶ 51.)

Moreover, ClicknClear purports to offer "legal services," on its website, including "legal advice for owners and users of intellectual property rights, copyright and related rights." (*Id.* ¶ 7.) ClicknClear obtained a U.S. trademark registration from the United States Patent and Trademark Office ("USPTO") for the mark "CLICKNCLEAR" to use in connection with, *inter alia*, "Legal Services" and "providing legal information and legal advice for owners and users of intellectual property rights." (*Id.* ¶ 19(b) (citing U.S. Reg. No. 6,236,184.))

Finally, ClicknClear offers a "License Verification System" ("LVS") feature on their website that purports to evaluate and verify third party licenses, including Tresóna's licenses. (*Id.* ¶¶ 106, 107.) The LVS requires users to create an account with ClicknClear, select the events at which the user is performing or competing, upload a sound recording of the sound, and upload proof of licensing documentation. (*Id.* ¶ 111-113.) The LVS then uses this information to determine whether the license contains a grant of all the necessary "rights." (*Id.* ¶ 113.) The LVS returns one of three possible outcomes for the user: "green" for licensed, "yellow" for unverified, and "red" for unlicensed. (*Id.*) The LVS only returns an automatic "green" result if the license is from ClicknClear, while any license issued by third parties will return a "yellow" result. (*Id.* ¶ 114.) ClicknClear has stated that when consumers receive an "unlicensed" or "unverified" result via the LVS, it causes them to "panic." (*Id.* ¶ 118.)

### C. ClicknClear's Relationship with Tresóna

Although Tresóna has sometimes assisted ClicknClear in its attempts to obtain proper licenses for performance sports participants and organizations, (*Id.* ¶ 43), much of the relationship between the two licensing companies has been acrimonious.

ClicknClear has stated, in public presentations and communications with consumers, that ClicknClear's products and services are better than Tresóna's. For example, in a prominent Facebook group for marching band arrangers, Defendant Epp suggested that ClicknClear is able to offer better licenses at a lower price than Tresóna because Tresóna does not use a "pre-cleared model." (*Id.* ¶ 37.) Additionally, in a presentation given to potential consumers in or around June 2022, ClicknClear suggested that its licenses are "stronger" than those offered by Tresóna as they cover "all" of the rights necessary. (*Id.* ¶ 131.) ClicknClear also "suggested" that "Tresóna does not offer a full license but rather only a certificate." (*Id.* ¶ 133.) Finally, ClicknClear made a statement in June 2025 that ClicknClear was "in a really strong position to do a lot of harm to [Tresóna]." (*Id.* ¶ 135.)

Both parties have attempted to stop the conduct of the other. On June 1, 2021, Tresóna sent ClicknClear a cease-and-desist letter, demanding a retraction of Defendant Epp's statements in the Facebook group. (*Id.* ¶ 40.) ClicknClear agreed to the retraction and noted on a separate post that ClicknClear did not issue print licensing for the creation of sheet music. (*Id.*) On November 2023, ClicknClear sent a cease-and-desist letter to Tresóna, asking Tresóna to retract various "false and misleading claims about ClicknClear's pricing and copyright licenses" that Tresóna made in an email between Tresóna, ClicknClear, and a representative of a public school. (*Id.* ¶ 46–47.) Tresóna declined to retract the statements. (*Id.*) Finally, on September 18, 2024, Tresóna sent a letter to the Federal Trade Commission ("FTC"). (*Id.* at 48.) The letter stated that

ClicknClear made various false and misleading statements, including about the types of rights needed for various activities under U.S. law, and that ClicknClear offered "the only legitimate music licensing solution for performance spots." (*Id.*) The Complaint does not allege that the FTC has taken any action. (*See generally* Compl.)

## II. PROCEDURAL BACKGROUND

Tresóna filed the Complaint against ClicknClear on July 28, 2025, alleging violations of Section 43(a) of the Lanham Act and New York General Business Law § § 349, 350-a. (Compl. at ¶ ¶ 47, 51.) ClicknClear filed its motion to dismiss on October 27, 2025. (Def's Mot. to Dis., "Mot.", ECF Nos. 30-33.) Tresóna opposed the motion on November 20, 2025 (Opp. to Mot. to Dis., "Opp.", ECF No. 43), and ClicknClear filed a reply on December 8, 2025. (Reply to Opp. to Mot. to Dis., "Reply," ECF No. 50.) The Court heard oral argument on January 20, 2026. (ECF Entry 01/20/2026.)

## III. APPLICABLE LAW

### A. Motion to Dismiss

A defendant may seek to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sullivan v. UBS AG*, 149 F.4th 206, 217 (2d Cir. 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation,"

or to credit "mere conclusory statements" and "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.[2]

**B. False Advertising under Section 43(a) Lanham Act**

Section 43(a) of the Lanham act "makes actionable false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." *Boule v. Hutton*, 328 F.3d 84, 90 (2d Cir. 2003) (internal quotation marks omitted). "To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). "[S]tatements of opinion are generally not the basis for Lanham Act liability." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) (citing Restatement (Third) of Unfair Competition § 3 cmt. d (A.L.I. 1993)).

**C. New York General Business Law § § 349, 350**

Sections 349 and 350 of the New York General Business Law make unlawful "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service." *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 461 (S.D.N.Y. 2020) (citing N.Y. Gen. Bus. L. § § 349, 350.). "To establish a *prima facie* case under either

2 ClicknClear argues that because the Complaint alleges that ClicknClear "knowingly," "brazenly," and "willfully" engaged in false advertising, Tresóna is subject to the heightened pleading requirement of Fed. R. Civ. P. Rule 9(b) for claims sounding in fraud. (*See* Mot. at 6 (citing Compl. ¶¶ 49, 159, 161, 171.) As Tresona correctly notes, however, this Circuit has almost uniformly concluded that "Rule 8(a), Fed. R. Civ. P., and not Rule 9(b), Fed. R. Civ. P., applies to false advertising claims under the Lanham Act." *Wellnx Life Scis. Inc. v. Iovate Health Scis. Rsch. Inc.*, 516 F. Supp. 2d 270, 283 n.2 (S.D.N.Y. 2007); *see also John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y.1997) (noting that a false advertising claim need not plead 'fraudulent intent' and need not be pled with heightened particularity.); *UPS Store, Inc. v. Hagan*, No. 14CV1210, 2015 WL 9256973, at *4 (S.D.N.Y. Nov. 18, 2015) (same); *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 502 n.3 (D. Conn. 2009) ("The sole case from within this Circuit cited by the moving parties, *Volunteer Firemen's Ins. Servs. v. McNeil & Co.*, 221 F.R.D. 388, 393 (W.D.N.Y.2004), came to a different conclusion than the great majority of other courts within this Circuit who have addressed this argument.").

provision, 'a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'" *Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 465 (S.D.N.Y. 2019) (quoting *Maurizio v. Goldsmith*, 230 F.3e 518, 521 (2d Cir. 2000).

## IV. CLICKNCLEAR'S MOTION TO DISMISS TRESÓNA'S LANHAM ACT CLAIM IS GRANTED

The Complaint identifies three categories of allegedly false advertisements: ClicknClear's (A) statements about necessary rights for music licensing; (B) license verification system; and (C) disparaging comments about Tresóna. The Court considers each category in turn.

### A. ClicknClear's Statements About Necessary Rights for Music Licensing

Tresóna takes issue with ClicknClear's representations on its website, presentations, and webinars that a license is required to (1) combine (or set) a choreographed routine to copyrighted music; (2) publicly perform music with a choreographed routine set to music; and (3) practice alone (collectively, the "necessary rights statements"). Tresóna argues that ClicknClear's necessary rights statements are both literally and impliedly false because these are "illusory" rights that consumers do not need in all situations. ClicknClear argues that the rights are actually needed, and even if they weren't, ClicknClear's statements are non-actionable opinions of law that do not constitute commercial speech.

1. <u>Non-Actionable Opinions of Law</u>

As a preliminary matter, ClicknClear's necessary rights statements likely constitute non-actionable opinions of law. A statement of opinion is one that is incapable of being proven false. *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 541 (S.D.N.Y. 2018); *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022) (same). Here, ClicknClear's necessary rights statements purport to determine which rights are needed by consumers to use certain recordings for certain

purposes. As both sides agree, the necessity of these rights involve unclear and contested areas of copyright law. Indeed, ClicknClear and Tresóna devote *most* of their briefing to arguing whether or not each subset of the necessary rights (to set a choreographed routine, to publicly perform, and to practice alone) are actually *needed* by consumers. As the briefing in this motion shows, ClicknClear is "expressing an opinion on an inconclusive question of law" and "not making representations of verifiable or 'hard definable facts.'" *Dial A Car, Inc. v. Transportation, Inc.*, 884 F. Supp. 584, 592 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996). Accordingly, because ClicknClear's statements cannot be unequivocally proven false, Tresóna fails to allege that ClicknClear's necessary rights statements constitute facts actionable under the Lanham Act.

Several courts in the country have similarly recognized that "nonverifiable legal opinions", including opinions about copyrightability, are "not actionable under the Lanham Act." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 554 (D. Md. 2013); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."); *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1357 (S.D. Fla.), *aff'd sub nom. Gen. Cigar Holdings v. Altadis, S.A.*, 54 F. App'x 492 (11th Cir. 2002) (holding that "speculative legal analysis does not give rise to Lanham Act liability unless it can be shown to be false.").

These principles have been adopted in this Circuit. *See, e.g.*, *Groden*, 61 F.3d at 1051 (holding that a statement of opinion is one that "could not reasonably be seen as stating or implying provable facts about [plaintiff's] work."); *Roberto Coin, Inc. v. Goldstein*, No. 18-CV-4045(EK)(ST), 2021 WL 4502470, at *11 n.8 (E.D.N.Y. Sept. 30, 2021) (citing *Coastal Abstract*

*Serv., Inc.*, 173 F.3d at 731–732); (same) *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 415 (D. Conn. 2018) (same).

2. Falsity

Even assuming, *arguendo*, that the ClicknClear statements are of fact and not opinion, Tresóna fails to plead a false advertising claim under the Lanham Act. A plaintiff may establish that a statement is false under two theories: either by demonstrating that challenged advertisement is "literally false, *i.e.*, false on its face," *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007), or that the statement, while literally true, constitutes an implied falsehood that is "nevertheless likely to mislead or confuse consumers." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 112 (2d Cir. 2010).

Tresóna fails to plausibly allege that ClicknClear's necessary rights statements are literally false. "Under the 'literally false' theory, the message must be unambiguous; if the representation 'is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false.'" *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018); *see also Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir. 2016) ("[O]nly an *unambiguous* message can be literally false." (quoting *Time Warner Cable*, 497 F.3d at 153) (emphasis in original)). As established above, ClicknClear mentions on its website, quite ambiguously, which rights are "*required* for ensembles to make an arrangement of music to accompany your routine." (Compl. ¶ 51, Figure 3 (emphasis added).) In order for these statements to be literally false, Tresóna would have to plausibly allege that there is *no* instance in which these rights are required. As both sides concede, however, whether or not these rights are needed depends on the outcome of a "fact-specific and [] individualized inquiry" in this "unsettled area of

copyright law." (Reply at 4 n.10; Opp. at 3.) In other words, because there are instances in which ClicknClear's assertions are true, the statements are not literally false as a general proposition.

Alternatively, Tresóna argues that the facts sufficiently allege "implied falsity (*i.e.*, likelihood of confusion)." *Trackman, Inc. v. GSP Golf AB*, No. 23 CIV. 598 (NRB), 2024 WL 4276497, at *15 (S.D.N.Y. Sept. 24, 2024). "[P]laintiffs alleging an implied falsehood are claiming that a statement, whatever its literal truth, has left an impression on the listener [or viewer] that conflicts with reality"—a claim that 'invites a comparison of the impression, rather than the statement, with the truth.'" *Time Warner Cable*, 497 F.3d at 153. Here, viewing the facts in the light most favorable to Tresóna, ClicknClear's necessary rights statements encourage consumers to believe that ClicknClear's services provide full licensing for various rights that are *always* required for use, effectively misleading and confusing consumers as to the reality of the law. *See, e.g., Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 202 (S.D.N.Y. 2023).

At the pleading stage, however, Tresóna must also "allege that consumers or retailers were misled or confused by the challenged advertisement and *offer facts* to support that claim." *Lokai Holdings*, 306 F. Supp. 3d at 639 (citations omitted). "Alternatively, courts have allowed implied falsity to be supported by evidence that the defendant intended to deceive the public through 'deliberate conduct' of an 'egregious nature,' in which case a rebuttable presumption of consumer confusion arises." *Church & Dwight Co.*, 843 F.3d at 65 (quoting *Merck Eprova AG v. Gnosis S.P.A.*, 760 F.3d 247, 255–56 (2d Cir. 2014))).

Tresóna has not come forward with any evidence of consumer confusion, nor has it alleged how ClicknClear's statements were in any way deliberately deceptive or egregious. Tresóna asserts that ClicknClear itself warns that "[t]here is often misleading information about what rights are required," (Compl. ¶ 51), and that "there have been LAWSUITS for copyright infringement."

(*Id.* ¶ 101, Figure 15.)[3] Tresóna asserts that "[c]ustomers have told Tresóna that they are facing pressure from their federations and governing bodies to use ClicknClear instead of Tresóna," and "the pressure is driven at least in part because of ClicknClear's false and misleading statements as well as the LVS." (Compl. ¶ 138.) But the Complaint must do more than note a complex legal area or "identify[] a broad swath of people [that were] allegedly deceived." *PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy,* 530 F. Supp. 3d 301, 351 (S.D.N.Y. 2021) (internal citation omitted).

Here, Tresóna fails to identify any "federations" or "governing bodies" that pressured consumers, nor does Tresona allege how this pressure has caused customers to buy ClicknClear's licenses as opposed to Tresóna's. And even if Tresóna did allege that customers were buying ClicknClear licenses as opposed to Tresóna's, Tresóna does not allege how these decisions were because of ClicknClear's necessary rights statements as opposed to other reasons for purchasing ClicknClear's licenses. Accordingly, because Tresóna fails to adequately allege that "any potential [customers] are likely to be dissuaded" by the necessary rights statements, *Davis*, 345 F. Supp. 3d at 544, or that a customer's belief in the necessary rights statements "likely influenced their purchasing decisions," *Lokai Holdings*, 306 F. Supp. 3d at 639, Tresóna fails to allege implied falsity under the Lanham Act.[4]

---

[3] Relatedly, to the extent that Tresóna alleges that ClicknClear's statement that there have been "LAWSUITS for copyright infringement" itself constitutes false advertising, (Compl. ¶ 101), that statement is literally true and thus not actionable. *See Boule*, 328 F.3d at 90 (noting that Section 43(a) of the Lanham act only "makes actionable false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services."). Moreover, ClicknClear's general representation about the existence of copyright infringement lawsuits is not a viable Lanham Act claim because the representation does not pertain to an "inherent quality or characteristic of the product [at issue]." *Sussman–Automatic Corp.*, 15 F.Supp.3d at 269 (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001)).

[4] Because Tresóna fails to plausibly allege falsity, the Court declines to consider whether Tresóna plausibly alleged materiality, commercial advertising, or injury. *Church & Dwight Co.*, 843 F.3d at 65.

**B. ClicknClear's License Verification System**

Tresóna alleges that ClicknClear's LVS feature, which evaluates third party licenses to determine whether the licenses contain all the necessary "rights" a consumer may need to use a recording, violates the Lanham Act. As alleged, the LVS only returns an automatic "green" result, which denotes a legally compliant license, for licenses that were issued by ClicknClear in the first place. All other licenses issued by third parties, including Tresóna's, will return a "yellow" result, meaning the license's legality is "unverified," or red for "unlicensed." (Compl. ¶ 113.)

Because Tresóna alleges that ClicknClear is offering "illusory" rights, Tresóna argues that the LVS is a "marketing tool" used to "perpetrate the false advertising that all the targeted consumers need licensing," (Opp. at 20.), and a "conversion tool" to turn Tresóna customers into ClicknClear customers. (Compl. ¶ 14.) Moreover, Tresóna alleges that the LVS positions itself as the "sole, exclusive arbiter of what constitutes 'unlicensed music' and what 'rights' must be licensed." (*Id.* ¶ 119.) Upon information and Belief, Tresóna alleges that Defendant Epp has stated that when consumers receive an "unlicensed" or "unverified" result via the LVS, it causes them to "panic." (*Id.* ¶ 118.)

None of these allegations demonstrate that ClicknClear's LVS constitutes false advertising under the Lanham Act. The LVS, ultimately, is an inherently subjective rating system that evaluates the quality of third-party licenses. Indeed, the outcome of the LVS is dependent on which factors ClicknClear believes to be important in evaluating a license. "A reasonable consumer would view [LVS's] rating as just that – the defendant's evaluation." *Davis*, 345 F. Supp. 3d at 541. In other words, the outcome of the LVS is inherently subjective, and "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act." *Groden*, No. 94-CV-1074, 1994 WL 455555, at *5.

Even assuming that the LVS's representations, like the necessary rights statements, were impliedly false or misleading, Tresóna similarly fails to allege sufficient indications of consumer confusion. Namely, Tresóna alleges that the LVS caused Tresóna to suffer harm to its business, reputation, and goodwill, along with causing Tresóna to suffer monetary damages, because consumers have been misled into purchasing ClicknClear licenses as opposed to Tresóna licenses. (*Id.* ¶ 158.) But beyond stating that consumers have been generally misled into purchasing ClicknClear licenses as opposed to Tresóna licenses, (*Id.* ¶ 158.), and that, upon information and belief, the ClicknClear has stated that the LVS causes consumers to "panic," (*Id.* ¶ 118), the "Complaint offers no non-conclusory allegations or facts to support the claim that consumers have been misled or confused" *Board-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556, 561 (2d Cir. 2018). As established above, this is insufficient to constitute a valid Lanham Act claim.

Finally, Tresóna alleges that ClicknClear's LVS has no authority to make "license verification" determinations because it is a "strictly legal matter" and ClicknClear is not a legal entity. (Compl. ¶ 13.) The unauthorized practice of law is not a basis for a Lanham Act claim. Indeed, the Act "does not have boundless application as a remedy for unfair trade practices." *Smartix Int'l Corp. v. MasterCard Int'l LLC*, No. 06 CV 5174 (GBD), 2008 WL 4444554, at *6 (S.D.N.Y. Sept. 30, 2008), *aff'd*, 355 F. App'x 464 (2d Cir. 2009). "According to its plain terms, the Lanham Act's protection only extends to infringement of registered trademarks, 15 U.S.C. § 1114; false designation of the origin of goods, 15 U.S.C. § 1125(a); and false advertising, 15 U.S.C. § 1125(a)." *Id.* (citing *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp. 2d 1179, 1186 (E. D. Mo. 2006).

Moreover, to the extent Tresóna alleges that these statements are false or misleading, Tresóna itself alleged that ClicknClear obtained a U.S. trademark registration to use in connection

with, *inter alia*, "Legal Services" and "providing legal information and legal advice for owners and users of intellectual property rights." (*Id.* ¶ 19(b) (citing U.S. Reg. No. 6,236,184.)) Tresóna does not allege how ClicknClear's statements are literally or impliedly false, and fails to demonstrate consumer confusion as a result of these claims.

### C. ClicknClear's Statements about Tresóna

Tresóna takes issue with four main statements made by ClicknClear about Tresóna: (1) a 2021 Facebook post that ClicknClear's products and services are better and less expensive than Tresóna's because Tresóna does not use a "pre-cleared model" and ClicknClear does, (Compl. ¶¶ 37-39); (2) a June 2022 presentation to potential client where ClicknClear "suggested" that "Tresóna does not offer a full license but rather only a certificate," (*Id.* ¶ 133), and that ClicknClear's licenses were "stronger" than Tresóna's, (*Id.* ¶ 131); (3) a statement in January of 2024 that Tresóna has "a very bad reputation," and cannot offer the required "licensing solutions" to participate in performance sports, (*Id.* ¶ 134); and (4) a statement made in June of 2025 that ClicknClear was "in a really strong position to do a lot of harm to [Tresóna]." (*Id.* ¶ 135.)

ClicknClear's statements about Tresóna's "very bad reputation," its representations that ClicknClear licenses are "better" or "stronger" than Tresóna's, and its assertions that ClicknClear was in a "strong position" to harm Tresóna all constitute nonactionable puffery under the Lanham Act. *Time Warner Cable, Inc.*, 497 F.3d at 159. Puffery is defined as "[s]ubjective claims about products, which cannot be proven either true or false." *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995). "Puffery might take the form of an overstatement expressed in broad and commendatory language, as opposed to a misleading description or false representation about an inherent characteristic of a good or service." *Davis*, 345 F. Supp. 3d at 541–42. Because these statements made by ClicknClear are not "reasonably" seen as "stating or implying provable facts,"

they are considered puffery that does not subject ClicknClear to Lanham Act liability. *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 370 (S.D.N.Y. 2019).

On the other hand, ClicknClear's statements in 2021, 2024, and 2025, that Tresóna does not use a "pre-cleared model," or that Tresóna does not offer a full legally compliant license but instead offers a "certificate," are statements of facts that could be proven true or false. Even assuming the statements to be literally or impliedly false, however, Tresóna fails to offer facts as to how these statements actually misled the public or affected their purchases. *Lokai Holdings*, 306 F. Supp. 3d at 639.

Tresóna also fails to allege that these statements constituted commercial speech. "[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 702 (S.D.N.Y. 2018). To qualify as "commercial advertising or promotion," ClicknClear's representations must have been "made for the purpose of influencing customers to buy defendant's goods or services" and "disseminated sufficiently to the relevant purchasing public." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56 (2d Cir.2002). The statements alleged here, one in a Facebook post that has now been deleted, and two upon information and belief, do not suggest "widespread dissemination within the relevant industry," and more aptly resemble "isolated disparaging statements" that "do not have redress under the Lanham Act." *Burton*, 344 F. Supp. 3d at 702.

## V. THE COURT DECLINES TO ADDRESS TRESÓNA'S GBL § § 349, 350 CLAIMS

Because Tresóna's federal claims are dismissed, the Court declines to exercise its supplemental jurisdiction over Tresóna's state law claims pursuant to New York GBL § 349 and

§ 350. "Although federal courts have supplemental jurisdiction . . . a court should nevertheless decline to exercise supplemental jurisdiction when the district court has dismissed all claims over which it has original jurisdiction." *Del Rio v. McCabe, Weisberg & Conway, LLC*, No. 19-CV-10312 (VSB), 2021 WL 5331676, at *5 (S.D.N.Y. Nov. 16, 2021) (internal quotation marks omitted). Moreover, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (internal citation omitted).

Here, the Court does not have a compelling reason to go against the "traditional values of judicial economy, convenience, fairness, and comity, [which] weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims" after a federal claim is dismissed. *Del Rio*, No. 19-CV-10312 (VSB), 2021 WL 5331676, at *5. Accordingly, Tresóna's state law claims are DISMISSED.[5]

## VI. LEAVE TO AMEND

Tresóna argues, in the alternative, that it should be granted leave to amend in order to "add additional facts it has discovered in support of its claims." (Opp. at 33.) "Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to

---

[5] Even if the Court were to consider Tresóna's state law claims, Tresóna fails to allege how ClicknClear's consumers were misled or confused by ClicknClear's statements, *Lokai Holdings*, 306 F. Supp. 3d at 642, or how ClicknClear's statement constituted harm to the public interest. *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 247 (S.D.N.Y. 2013) (holding that corporate competitors have standing to bring a Section 349 claim if "the gravamen of the complaint [is] consumer injury or harm to the public interest."); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (holding that, where the dispute is "between competitors [and] the core of the claim is harm to another business as opposed to consumers . . . courts have found that the public harm . . . is too insubstantial to satisfy the pleading requirements of § 349.").

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted). "A request to replead should be denied in the event that amendment would be futile." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012).

Here, the Court grants Tresóna leave to file an amended complaint. Despite the abovementioned deficiencies of the Complaint, it would not be futile for Tresóna to replead with actual evidence of consumer confusion as to the ClicknClear's misleading statements. *Kassel v. Moynihan*, No. 1:23-CV-06958 (JLR), 2024 WL 2832813, at *9 (S.D.N.Y. June 3, 2024). Moreover, because the standards for bringing a NYGBL § 349 claim "are substantially the same as those applied to claims brought under" § 43(a) of the Lanham Act, *Davis*, 345 F. Supp. 3d at 540, the Court also grants leave to amend as to Tresóna's state law claims.

## VII. CONCLUSION

ClicknClear's motion to dismiss the Complaint, (ECF No. 31), is GRANTED in its entirety.[6] Tresóna is granted leave to file an amended pleading consistent with this opinion and order and shall have until April 16, 2026 to do so. Should Tresóna timely file an amended pleading, ClicknClear shall have until May 18, 2026 to answer or respond to the amended pleading.

The Clerk of Court is directed to close the open motions at ECF Nos. 31, 51.

Dated: February 19, 2026
New York, New York

SO ORDERED.

George B. Daniels

GEORGE B. DANIELS
United States District Judge

---

[6] ClicknClear submitted various letters asking the Court to issue a stay of discovery pending the Court's resolution on ClicknClear's motion to dismiss. (*See* ECF Nos. 25, 57.) Because the Court is granting ClicknClear's motion to dismiss, the motion for a stay is moot and the Court declines to address its merits.